437 So.2d 1087 (1983)
James Roger HUFF, Appellant,
v.
STATE of Florida, Appellee.
No. 59989.
Supreme Court of Florida.
September 1, 1983.
*1088 Robert Q. Williams and Christopher J. Smith of Williams & Smith, Tavares, for appellant.
Jim Smith, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
This is an appeal from a final judgment of the trial court imposing two sentences of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and we reverse.
On April 21, 1980 Norman and Genevieve Huff were found shot to death in a remote area of Sumter County, near Wildwood, Florida. The victims' son, James Roger Huff (the appellant), was the first person to report the killing of his parents to a nearby resident. Appellant told the resident that some men had run their car off the road, knocked him unconscious, robbed and then murdered his parents. At the time, appellant appeared upset and had sand on his forearms but no blood was visible on his person. Appellant was taken into custody at the crime scene and transported to the Sumter County jail. On the drive to the jail, the deputy sheriff observed Huff rubbing his hands but saw nothing unusual about these actions. A gunshot residue test was administered at the jail but was inconclusive.
No murder weapon was ever found. Cause of death of Mr. Huff was a gunshot wound to the left side of the head, in addition to other bullet wounds to the left eye and right hand. Cause of death of Mrs. Huff was a combination of blunt trauma injury to the back of the head and a bullet wound in the neck, in addition to two other bullet wounds to the head.
Huff was indicted for the first-degree murder of his parents on June 2, 1980. Trial began on October 2, 1980 and the jury found appellant guilty on both counts. The jury recommended death on both counts. The trial judge sentenced appellant to death on both counts.
Appellant asserts five grounds for error in the trial phase. He first claims that the trial court erred in not granting his motion for directed judgment of acquittal where the only evidence of guilt was circumstantial and where he says the circumstantial proof adduced at trial did not exclude every reasonable hypothesis of innocence. There is no merit in this contention. Circumstantial evidence alone is sufficient to convict in a capital case in the absence of a reasonable alternative theory. McArthur v. State, 351 So.2d 972 (Fla. 1977); Davis v. State, 90 So.2d 629 (Fla. 1956). The state's evidence was clearly sufficient to have the case taken to the jury. The evidence that appellant was seen in the back seat of the death car with his parents an hour and a half before the murders were reported, the *1089 evidence that the killer had to be positioned in the back seat, the evidence that this car had been moved sometime subsequent to the murders, and the testimony of witness Joyner that he saw appellant alone driving a car immediately after the time of the murders, is evidence inconsistent with appellant's story and inconsistent with any reasonable hypothesis of innocence. In light of the state's evidence, the jury could properly have found appellant's story to be unreasonable beyond and to the exclusion of a reasonable doubt. The trial court correctly denied appellant's motion for acquittal.
Appellant's second issue likewise lacks merit. He claims that the trial court erred by prohibiting him from introducing character evidence of his lack of propensity for violence. At trial, appellant proffered the testimony of witness Spence who was to testify concerning appellant's character by the use of negative testimony. While it is permissible to develop this line of evidence by the use of negative testimony, see Herring v. State, 114 Fla. 156, 154 So. 187 (1934), in this instance appellant failed to do this properly. His proffered testimony was not directed at a pertinent trait of his character, as required by section 90.404(1)(a), Florida Statutes (1979), but was instead directed to appellant's general character. At no time during the proffered testimony was the witness questioned about appellant's specific character trait of propensity or lack of propensity for violence. It was thus not error for the judge to rule the proffered testimony inadmissible.
Appellant's third point is the basis for this Court's reversal of the murder convictions. Appellant claims and we agree that the trial court erred by denying a motion for mistrial when the state attorney implied in his closing argument that appellant had forged his deceased father's name to a guarantee agreement, where the state had offered no evidence at trial regarding the forgery of documents. Within the confines of this trial, this was reversible error.
The facts surrounding the raising of this issue are somewhat lengthy and a recitation of same is necessary. The State's Response to the Defendant's Discovery Demand listed "Handwriting Analyst, FDLE Crime Laboratory." That document also indicated that a handwriting analysis report was to be mailed to appellant upon receipt by the state attorney's office. In September 1980, appellant served upon the state a Motion to Strike wherein it was alleged that the state had failed to provide appellant with the handwriting analysis referred to in the State's Response to Discovery. During a hearing on the motion, the state attorney told the court that he did not believe that the crime lab in Tallahassee would be able to perform the handwriting analysis prior to trial. The state attorney also mentioned that if the analysis were not done, then the state couldn't introduce it as evidence. In October 1980, appellant served upon the state a Motion to Compel wherein it was requested that the court compel the state to produce the handwriting analysis referred to in the previous document. At a hearing on this motion, the state informed the court that it had not sent handwriting samples to the crime lab to be analyzed. Defense counsel then stated to the court that it believed that the state intended to call an Orlando attorney named Foster to testify that appellant had told Foster that he, appellant, had forged his deceased father's signature to a guarantee agreement. To dispute this claim, defense counsel volunteered to have appellant give handwriting samples to the state for purposes of analysis. Defense counsel requested the court prohibit Foster from testifying if the state did not want to analyze appellant's handwriting. Since the conversation was an admission against interest, the court refused.
During the trial, and after the jury was sworn, appellant successfully renewed his motion in limine in relation to witness Middlebrooks to suppress any testimony tending to indicate that appellant had forged his father's signature to a guarantee agreement. The basis for this motion was that an attack on appellant's character could not be made by proof of bad acts unless the defendant placed his character in issue. *1090 The state countered that the testimony would show the serious financial position that appellant was in at the time of the murders, which would go directly to the motive that the state said it intended to prove. Following this, the state called witness Middlebrooks during its case in chief. Before this witness was sworn, defense counsel reminded the court of its prior ruling granting the motion in limine. The state attorney again argued in opposition to the motion but the court reconfirmed that the motion had been granted. Following Middlebrooks' testimony, the state introduced as Exhibit 55 a copy of a civil complaint filed by Westinghouse which included the guarantee agreement.
Notwithstanding the above, in his summation to the jury the state attorney made the following comments:
I would ask you to do one other thing. Ladies and gentlemen, I submit that the testimony shows that state exhibit 55 was introduced into evidence and state exhibit 55 is that complaint, and the complaint is against the business, the defendant in this case, and Norman Huff. The defendant's murdered father. And ladies and gentlemen, I think the evidence shows that that suit was filed back on April 14th, and I think we can reasonably assume it took a few days for the papers to be served, and when this complaint was served upon Norman Huff, and he looked at it, I submit, ladies and gentlemen, that he looked at a page which I am going to invite you to look at when you go back into the jury room, and that is the first, second, third, ... fourth page. Guarantee agreement. And ladies and gentlemen I submit that that guarantee agreement is, as I look at it, bears the signature purported to be that of N.R. Huff, guaranteeing to make good the defendant's debt under this contract. And, ladies and gentlemen, I will ask you to take state's exhibit sixty-two, back into the jury room with you, the Last Will and Testament of Norman Huff, and to look at it, very carefully, and specifically to the page number... .
Defense counsel objected to the state's inference that the guarantee agreement had been forged. The court allowed the state to continue:
MR. BROWN (continuing) Ladies and gentlemen, I invite you to take state exhibit fifty-five, introduced into evidence, that suit against the defendant, and against his father, of Westinghouse, to look at that fourth page, that Guarantee Agreement, and look at that signature which appears says `N.R. Huff', and ladies and gentlemen when you go back to the jury room, I also invite you to take a look at that will, state exhibit number sixty-two, that John Williams testified here to yesterday, that he witnessed the signature of Norman Huff when he affixed it to that will, and ladies and gentlemen, I ask you to look at the third page in that will and to look at the signature of Norman Huff, Norman R. Huff that was placed there, in John Williams' presence, and I ask you to compare them, compare those signature, ladies and gentlemen, when you get back to the jury room.
The defense's motion for a mistrial was denied.
For three separate but interrelated reasons, the denial of the mistrial motion was error. First, a jury is not competent to make a handwriting comparison without the aid of expert testimony. In Clark v. State, 114 So.2d 197 (Fla. 1st DCA 1959), it was stated that "the comparison of handwritings is an art which can be judicially practiced only by expert or skilled witnesses. To allow a jury to assume the role of expert or skilled practitioners in the field of handwriting with no guide or format from which to base a considered opinion, is placing upon them a responsibility that transcends the average experience and common knowledge of a juryman." 114 So.2d at 203. Second, the state attorney is prohibited from commenting on matters unsupported by the evidence produced at trial. Glassman v. State, 377 So.2d 208 (Fla. 3d DCA 1979). The trial record is totally devoid of any evidence to substantiate that the signature of N.R. Huff which appeared *1091 on the guarantee agreement had been forged. The trial court had earlier denied appellant's motion to suppress the testimony of attorney Foster on the question of forgery but the state declined to call this witness to produce evidence on the topic. There thus was no proof whatsoever in the record of forgery by appellant. The state's injection of this important element into its closing argument to intimate appellant's motive for the murders violates the rule that argument of counsel be channeled by the evidence produced at trial. Third, given the somewhat-lengthy procedural background of this case on the forgery question, the damage to appellant by introduction of the state's intimations of forgery that were so highly improper clearly denied appellant a fair trial. As the trial judge himself stated, the evidence of appellant's guilt presented by the state wasn't the strongest. The state's case was totally circumstantial. The state concedes in its brief that the prosecutor's remarks were both improper and foolish. Since the jury found the appellant guilty, it is impossible to measure what impact the prosecutor's negative innuendoes had upon the jurors' deliberations. Since defense counsel could not rebut these prejudicial prosecutorial comments, it is apparent that appellant has been denied a fair trial.
Appellant raises another point on this appeal which we address because of retrial. He claims that the trial court erred by excluding from evidence a photograph depicting the presence in the immediate crime scene of one or more unauthorized individuals. This also was error. The photograph had been properly authenticated by both witnesses Thompson and Hawton and should have been admitted.
For the above-mentioned reasons, we reverse appellant's conviction and remand for a new trial.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.