595 So.2d 973 (1992)
Christopher ESTANO, Appellant,
v.
STATE of Florida, Appellee.
No. 91-1808.
District Court of Appeal of Florida, First District.
February 27, 1992.
Rehearing Denied April 8, 1992.
*974 James A. Johnston, Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen., and Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Chief Judge.
Appellant appeals the judgment and sentence imposed after a jury verdict of guilt on charges of organized fraud and petit theft. The charges arose in connection with the sale of business advertising on telephone book covers. The issue is whether the trial court abused its discretion when it excluded similar fact evidence regarding appellant's prior business dealings in Pensacola, which the defense attempted to introduce as relevant to the essential element of intent. We reverse.
Immediately before trial, the state moved in limine to exclude evidence that appellant sold advertising legitimately in Pensacola two weeks before the events in this cause. The defense sought introduction of this evidence to show an absence of intent to defraud, by showing that appellant's prior business activities in Pensacola were conducted in the same manner as the Pensacola business dealings at issue in this case. The trial court ruled the evidence of prior sales inadmissible.
The disputed evidence was proffered, and revealed that two weeks prior to the charged events, appellant sold telephone book covers to Pensacola businesses, and provided radio and television advertising purchased with partial payment and trade outs with the respective stations. At that time, appellant sold advertising for Multi Media Marketing. Appellant testified that his manner of selling telephone book covers in this case was exactly the same as it had been two weeks before. That is, he collected the money from the businesses before he paid for the radio and television advertising spots. The only difference between the two sales campaigns was that in the prior campaign, appellant worked as an employee, while in this case he worked for himself. Appellant further testified that it is standard practice in the telemarketing business to collect for advertising sales before making payment for television and radio advertising spots.
Evidence at trial established that appellant is a resident of Cincinnati, Ohio, and has worked in the field of telephone book cover sales for five years. Sometimes he is employed by advertising firms, and at times he works on his own under the name Trans Atlantic. Trans Atlantic was not listed in the Cincinnati telephone book; when appellant worked independently, he gave customers his home telephone number.
Suspicion attached to appellant when one of his customers discovered an error in her business address on the telephone book covers appellant delivered to her. The customer attempted to call Trans Atlantic in Cincinnati, and learned the company name was not listed in the Cincinnati telephone book. The customer became alarmed, and called all the other businesses listed on the telephone book covers, to advise that she suspected some problem with the deal. She also called the radio and television stations. When appellant became aware of the customer's concerns, he called her, and then returned to her business to try to rectify any problem she might have with regard to his business.
The record reflects that appellant did not collect from any business until he delivered the telephone book covers. In each instance, the deal contemplated television and radio air time to begin October 8, 1990, four days after appellant received payment for the telephone book covers and collateral advertising. There was evidence that television and radio spots can be scheduled on a one-day notice, or less. The receipts appellant gave to his customers were dated October 3 and 4, 1990, and indicated October 8, 1990, as the beginning date for the television and radio spots.
A deputy sheriff responded to a call from the concerned customer. When he arrived, appellant showed the checks he had received from his customers and the telephone *975 book covers prepared for this particular campaign. Appellant was not arrested, but agreed to go to the police station to answer more questions. Upon arrival at the police station, an officer advised he had done a computer check on appellant's name and discovered that he had an alias of Morin. At that point, appellant was arrested, and was held in jail without bond from October 4, 1990, until October 30, 1990. He testified that due to his detention, he was unable to arrange the promised television and radio advertising.
It was established at trial that appellant's birth name was Morin. He was adopted by his stepfather, but the name change did not take place until appellant was nineteen. (He was twenty-four at time of trial.) There was further testimony that persons engaged in telemarketing routinely use telephone names rather than ethnic surnames. Appellant in this case said he used the name "Christopher Davis" when he contacted potential customers by telephone.
The jury found appellant guilty as charged in the amended multi-count information. At sentencing, upon defense motion, the trial court dismissed three misdemeanor counts of the information because the state presented no evidence as to those counts. The pre-sentence investigation report indicated appellant had no prior record, and carried a recommendation of probation. The trial court withheld adjudication as to the felony count, but sentenced appellant to ten months jail time, followed by probation for three years. Appellant was adjudicated guilty on the remaining misdemeanor counts, and was placed on probation for ninety days in connection with these petit theft offenses.
Section 817.034, the "Florida Communications Fraud Act," defines "scheme to defraud" as "a systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act." § 817.034(3)(d), Fla. Stat. (1989). (Emphasis supplied.) A false representation of a past or existing fact is essential to a conviction under the theft statutes, i.e., "a promise to do something in the future, even though it be a false promise, is not a representation of a past or existing fact and will not support a conviction for false pretenses." Martin v. State, 379 So.2d 179, 182 (Fla. 1st DCA 1980).
Evidence is admissible under section 90.404(2), Florida Statutes, to show intent, which generally is an ultimate issue in the case. Jensen v. State, 555 So.2d 414, 415 (Fla. 1st DCA 1989), review denied, 564 So.2d 1086 (Fla. 1990); Traylor v. State, 498 So.2d 1297, 1301 (Fla. 1st DCA 1986), approved, 596 So.2d 957 (Fla. 1992); Ehrhardt, Florida Evidence § 404.12 (1992 Ed.). While there must be more than a general likeness between the similar act and the crime charged, "absolute factual identity is not required." Traylor, 498 So.2d at 1301. This is because evidence of other crimes is not limited to other crimes with similar facts. "So-called similar fact crimes are merely a special application of the general rule that all relevant evidence is admissible unless specifically excluded by a rule of evidence." Bryan v. State, 533 So.2d 744, 746 (Fla. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989). Thus, evidence of crimes which are factually dissimilar to the charged crime is not barred if the evidence of other crimes is relevant. Id.
For the most part, similar fact evidence is a tool of the prosecution. However, there is nothing in the language of section 90.404(2) precluding use of similar fact evidence by a defendant in a criminal case. Brown v. State, 513 So.2d 213, 214-15 (Fla. 1st DCA 1987), dismissed, 520 So.2d 583 (Fla. 1988). In other words, "a defendant may introduce similar fact evidence of other crimes ... for exculpatory purposes if relevant." State v. Savino, 567 So.2d 892, 893 (Fla. 1990); Rivera v. State, 561 So.2d 536, 539 (Fla. 1990). In Rivera, the court agreed with the third district in Moreno v. State, 418 So.2d 1223, 1225 (Fla. 3d DCA 1982), that where the *976 evidence tends in any way, even indirectly, to establish reasonable doubt of the defendant's guilt, it is error to deny its admission. 561 So.2d at 539.
Otherwise relevant evidence "is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (1989). The determination whether to admit or exclude evidence is a matter of trial court discretion. State v. Wright, 473 So.2d 268, 269 (Fla. 1st DCA 1985), review denied, 484 So.2d 10 (Fla. 1986).
Evidence of appellant's prior telemarketing contacts and sales in Pensacola was probative on the question of the propriety of his business practices in this case. Since there has been no showing that admission of this evidence would confuse, mislead, or prejudice the jury, and since the evidence could cast a reasonable doubt of appellant's guilt, the trial court abused its discretion in denying its admission. See State v. Savino, 567 So.2d at 893; Rivera v. State, 561 So.2d at 539; Brown v. State, 513 So.2d at 215.
Accordingly, the judgment and sentences imposed are reversed, and the cause is remanded with direction to grant a new trial.
ERVIN and ALLEN, JJ., concur.