PETERSON, Judge.
Ronald Bogren appeals his convictions and sentences for one count of grand theft in the second degree in violation of sections 812.014(1) and (2)(b), nineteen counts of grand theft of the third degree in violation of sections 812.014(1) and (2)(c)(l), and one count of petty theft, a misdemeanor.
Bogren and his wife, Linda, were sole stockholders of a Florida corporation incorporated in 1980 to conduct a travel agency business known as Lin’s Travel Agency, Inc., in Lake County. The business did well until sometime in 1988 and finally closed on March 8, 1989. Eight days later, the Bogrens filed a petition for personal bankruptcy. The state later filed an information against Ronald Bogren for theft of advance payments made by customers who had not received the travel arrangements for which they had paid. Bogren was found guilty after a jury trial.
In this appeal, Bogren challenges the trial court’s exclusion of certain evidence he sought to introduce, the denial of his motion for mistrial after the prosecutor suggested in his closing argument that the victims’ funds were used to pay a gambling debt, and the sufficiency of the evidence to sustain his conviction. We find that a jury could lawfully conclude from the evidence presented that Bogren did commit the alleged crimes, and, therefore, we find no merit in his additional challenge that a judgment of acquittal should have been granted at the conclusion of the state’s case. The remaining points raised by Bo-gren are discussed below.
I. EXCLUSION OF EVIDENCE OF SATISFIED CUSTOMERS AND BANKRUPTCY
The primary basis for the state’s charges against Bogren is that, beginning sometime in 1988 and continuing until the business closed in 1989, Bogren accepted payments in advance from customers for travel arrangements and knew at the time he accepted the payments that the travel would not be provided. Instead of paying the providers of the travel services, it is alleged, Bogren diverted the funds for other purposes. While there exists no requirement that the advance payments be placed in a trust or escrow account, the state argued, when Bogren accepted the advance payments, his corporation was on the brink of collapse, he failed to pay providers for the travel anticipated by the customers, and he knew the customers would never realize their travel plans.
*549 The state’s proof of the requisite criminal intent consisted of circumstantial evidence of overdue accounts payable and loans, overdrawn bank accounts, late payment of obligations, business expenses, and distributions of cash to him and his wife from customer advance payments at a time when the state alleged no person could reasonably believe that the corporation could survive. Additionally, customer/victims testified about their advance payments and the nonrealization of their travel arrangements, and Bogren’s former bookkeeper testified about Bogren’s instructions to distribute checks when the bank account was substantially overdrawn. The bookkeeper also testified that he heard Bo-gren make false excuses to customers who demanded refunds of advance payments made for travel arrangements that were never received. Nevertheless, Bogren continued to allow customers to make advance payments for trips that were never realized.
During the trial, Bogren attempted to introduce testimony of certain customers who either received the travel arrangements for which they paid or received a refund. He also attempted to introduce evidence of his personal bankruptcy. Bo-gren argues that the trial court erred by excluding testimony of his personal bankruptcy and of customers who would testify that they were satisfied with travel arrangements made by the travel agency. He asserted at trial that the bankruptcy testimony was important to show lack of intent to commit the crimes in that he did not leave town after the travel agency closed, and he tried to handle his money problems “in a legal manner set out by the law.” He argued that the testimony of customers who paid for and received the travel arrangements should be allowed because the allowance of testimony by only those who did not receive travel arrangements for which they had paid implies that Bogren continued the agency’s business when it was financially troubled solely to defraud customers. The state successfully objected to the relevancy of this testimony.
The parties have not been particularly helpful to us in their briefs in supporting either the introduction or exclusion of this testimony. Bogren relies upon section 90.-402, Florida Statutes (1989), which provides that “[a]ll relevant evidence is admissible, except as provided by law.” The state simply cites State v. McClain, 525 So.2d 420 (Fla.1988), for the proposition that it is within the trial court’s discretion to weigh the probative value of the evidence against the danger of unfair prejudice, and Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980), for the proposition that discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable. Bogren has provided as a supplemental authority Estano v. State, 595 So.2d 973 (Fla. 1st DCA 1992), a case which supports his position.
While we would normally agree with the state’s argument that evidence of good deeds would be irrelevant in a criminal trial, it may be relevant when the criminal intent of the accused must be shown by circumstantial evidence during the operation of an otherwise legitimate business. Prior good deeds would likely be irrelevant in a trial involving charges of embezzlement by a bookkeeper or robbery where criminal intent is implied by the act. In the instant case, however, one cannot infer that Bogren had a criminal intent simply because he accepted funds from customers for travel while operating a travel business which was experiencing financial difficulties. More is required and the state had the difficult chore of proving Bogren’s intent by presenting evidence of surrounding circumstances. This chore should not be made easier by limiting the evidence to testimony of witnesses who paid for but did not receive their travel arrangements when other witnesses existed who did receive that for which they paid or received a refund. The testimony of these witnesses is important in evaluating the surrounding circumstances that aid in showing Bogren’s intent or lack of intent to commit theft. We believe that the trier of fact cannot fairly determine whether Bogren’s actions were governed by poor business judgment or by intent to obtain the funds of the customers in a manner prohibited by the *550 criminal statute if the.evidence is limited only to those who did not receive their travel. While such similar fact evidence is typically a “tool of the prosecution,” section 90.404(2) does not specifically preclude the use of such by a criminal defendant. Estano, 595 So.2d 973. In the instant case, as in Estano,[1] evidence of “prior good acts” within or very close to the time period involved in the alleged criminal acts was relevant to the essential element of criminal intent.
When a business fails through misfortune, illegal activity, absence of business sense, or other reasons, customers and creditors normally sustain losses. It is important to trace the funds of a failed business during the period relevant to the failure in order to show illegal activity or, conversely, legal activity, if the accused chooses to conduct a defense. In conducting that defense, it may be important to prove that the timing of filing a petition in bankruptcy, the type of bankruptcy, and the assets of the bankrupt estate are such that the accused took action to preserve the assets for customers and that the assets constituting the bankrupt’s estate indicate an absence of profit motive of the accused to cause a business to fail.
The evidence allowable under the umbrella of surrounding circumstances to prove or disprove criminal intent is to be determined within the broad discretion of the trial judge and should not be so remote as to lengthen a trial unnecessarily or to burden the triers of fact. In the instant case, evidence of customers who received their travel arrangements in the early years after incorporation would be irrelevant. On the other hand, testimony of satisfied customers during the time beginning with the periods covered by those who did not receive their paid arrangements, would be within the umbrella of relevant circumstances. Because the trial court prohibited Bogren’s presentation of testimony of satisfied customers during the critical days of 1988 and 1989, the jury was prevented from learning of Bogren’s overall business operations. Instead, they were directed only to the victims’ losses, thus, allowing the conclusion that those losses represented the character of the business and its only revenue-producing activity.
A fine line exists between interpreting the victims’ losses of the advance payments as theft or as civil matters, and a defendant must be afforded broad latitude in the presentation of evidence to show that the business was conducted in a legitimate manner although it may have been conducted in a financially unsound manner. Because Bogren’s latitude to present such evidence was unduly restricted, we vacate the judgment and sentence and remand for a new trial.
II. ARGUMENT TO JURY REGARDING GAMBLING DEBTS
The state's evidence indicated that Bogren was a gambler. He had a $5,000 line of credit at the Imperial Palace, a hotel/gambling casino in Las Yegas. In November 1988, he made a trip to Las Yegas with two of his friends from Lake County with whom he had previously made small wagers. During the trip, he overdrew his personal account when he wrote a personal check for $3,500 to the Imperial Palace and was quickly reimbursed for it from the corporate business account. Bo-gren testified that the trip was for the purpose of making arrangements for a group of 300 mobile home owners to visit Las Vegas on a subsequent trip and that he used his personal check to make room deposits for which he was subsequently reimbursed by the corporation to prevent an overdraft from occurring in his personal bank account. The source of funds for the reimbursement check from the corporation was the advance payments from customers who never received their travel plans.
*551 The assistant state attorney argued to the jury that “[t]he bottom line here, folks, is that the money from his neighbors at Lakes at Leesburg went to pay a gambling debt.” The defense objected that such a conclusion was not supported by the evidence. The court overruled the objection, remarking in the presence of the jury that it was “a fair comment on the evidence.” The state argued that Bogren wrote the check for $3,500 on his personal account to a casino where he had a $5,000 line of credit. It further argued that “[the] money goes out of the corporate account the same day the Lakes at Leesburg people pay for their cruise to nowhere, the cruise they never got. He (Bogren) puts it into his personal account to cover a check to the casino.”
Bogren cites Huff v. State, 437 So.2d 1087 (Fla.1983), to support his argument that the state is prohibited from commenting on matters unsupported by evidence. In Huff the state’s closing argument implied that the defendant had forged his deceased father’s name to a guaranty agreement when no mention of a forgery had been made during the trial. Bogren argues that, since no direct evidence was presented that the $3,500 check to the casino was used to pay gambling debts, the argument was not supported by the evidence. However, in Huff, evidence of forgery was specifically excluded by the trial court while, in the instant case, evidence of Bogren’s gambling was specifically allowed.
The Florida Supreme court stated in Craig v. State, 510 So.2d 857, 865 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988):
When counsel refers to a witness or a defendant as being a “liar,” and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence. It was for the jury to decide what evidence and testimony was worthy of belief and the prosecutor was merely submitting his view of the evidence to them for consideration.
It appears reasonable to infer from the testimony in the instant case that Bogren was a frequent gambler. Bogren’s avowed purpose in traveling to Las Vegas was to make arrangements for his customers’ travel, yet he paid with a check from his personal account on an insufficient balance rather than from the corporation account containing sufficient funds. It is also reasonable to infer that the corporate funds used to reimburse Bogren to cover his personal check may have been used to pay off a gambling debt to a casino where Bogren had a $5,000 line of credit. Thus, the testimony concerning Bogren’s gambling supports the argument made by the state in its closing argument.
III. CONCLUSION
In summary, we find that the exclusion of the evidence of the bankruptcy and of the delivery of travel services or refunds to customers during the period in question constituted reversible error. We therefore vacate the convictions and sentence and remand for a new trial.
VACATED; REMANDED for new trial.
W. SHARP and DIAMANTIS, JJ., concur.

. See also Sharp v. State, 221 So.2d 217, 218-19 (Fla. 1st DCA 1969) (”[T]he State introduced similar factual evidence pertaining to other pur-chases_ [T]he defendant’s proffer was restricted to the same subject matter and the same period of time. Fair play and common sense dictates [sic] that what is sauce for the goose is sauce for the gander. The State opened the door and then attempted to lock same to defendant.”).