2005-NMCA-023

106 P.3d 1283

### STATE of New Mexico, Plaintiff–Appellee,

v.

### Ellen MERCER, Defendant–Appellant.

### No. 23,390.

Court of Appeals of New Mexico.

Dec. 29, 2004.

Certiorari Denied, No. 29,034, Feb. 14, 2005.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

Brian A. Pori, Inocente, P.C., Peter Schoenburg, Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Frye, LLP, Albuquerque, NM, for Appellant.

## OPINION

**WECHSLER, Chief Judge.**

{1} Defendant Ellen Mercer appeals her convictions for two counts of fraud and four counts of embezzlement. She argues that: (1) the district court erred in refusing to allow her to introduce the testimony of a satisfied business customer; (2) the district court improperly limited the scope of Defendant's cross-examination of the State's witness, Danny Gamboa, and improperly excluded extrinsic evidence relevant to Gamboa's motive and bias; (3) the district court erred in allowing an amendment to the grand jury indictment to add new charges; (4) the evidence was insufficient to support her convictions; (5) she was erroneously subjected to double jeopardy when convicted and sentenced for both fraud and embezzlement; and (6) cumulative error warrants reversal.

{2} We reverse and remand for a new trial to allow Defendant to introduce the testimony of at least one satisfied customer. We address Defendant's remaining issues only to the extent they either have the potential of affording Defendant greater relief on appeal or they are likely to recur on retrial.

### Background

{3} Defendant was the owner and operator of Kitchen 'N Bath Design in Las Cruces, New Mexico. As the owner and operator, Defendant primarily engaged in the design and construction of kitchen and bathroom countertops and cabinets. After receiving advance payments and failing to perform on her contractual obligations, Defendant was indicted on four counts of fraud, or, in the alternative, four counts of embezzlement, for activities arising out of the operation of her business. She was indicted on two counts of fraud over $20,000, or, in the alternative, embezzlement, with respect to transactions involving Danny and Paula Gamboa (the Gamboas) and Scott and Terry Adams (the Adamses). She was also charged with two counts of fraud over $2500, or, in the alternative, embezzlement, with respect to transactions involving the Gamboas and David Loyd and Kimela Miller–Loyd (the Miller–Loyds). After a jury trial, Defendant was convicted on all four counts of embezzlement and two counts of fraud.

### Testimony Regarding a Contemporaneous Legitimate Business Transaction

{4} At trial, the State introduced testimony from Kimela Miller–Loyd, the Gamboas, and the Adamses that Defendant had defrauded them by collecting fees from them for goods and services that were never delivered. Defendant sought to introduce testimony from a satisfied customer as evidence of lawful business dealings. The State objected claiming that this testimony was irrelevant. Defendant responded that the testimony was directly relevant to her claim that she never intended to defraud anyone in her business dealings. To refute the State's evidence of Defendant's fraudulent intent, she sought to prove that she ran a legitimate, ongoing business, which regularly and successfully performed on projects similar to those at issue in the criminal proceedings. The State then argued that, if Defendant was allowed to introduce testimony of satisfied customers, the State would seek to bring in other dissatisfied customers. The State also argued that Defendant was improperly trying to introduce extrinsic evidence of Defendant's character.

{5} The district court excluded the evidence on the grounds that it was improper extrinsic evidence of character. *See* Rule 11–404 NMRA. The court observed that, under *State v. McCallum*, 87 N.M. 459, 461, 535 P.2d 1085, 1087 (Ct.App.1975), the State would be entitled to bring in dissatisfied customers to show that Defendant continued to undertake projects which she could not complete. However, the court found that *McCallum* did not authorize Defendant to introduce the testimony of satisfied customers because that testimony would be improper extrinsic evidence of character or reputation.

{6} We analyze this decision of the district court concerning the admission or exclusion of evidence for abuse of discretion and will not disturb the exercise of that discretion absent a clear abuse. *State v. Stanley*, 2001–NMSC–037, ¶ 5, 131 N.M. 368, 37 P.3d 85. "An abuse of discretion occurs

when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995) (internal quotation marks and citation omitted).

{7} Under Rule 11–404, evidence of other acts may be admissible to prove motive, intent, and absence of mistake. In *McCallum*, 87 N.M. at 461, 535 P.2d at 1087, this Court held that, in a prosecution for fraud against a building contractor, the state could introduce evidence of other instances of uncharged misconduct involving similar failures to complete construction projects. We held that such evidence is admissible on the issue of the defendant's motive or intent to defraud and noted that, in the absence of such evidence, the jury could conclude that "defendant is simply a poor businessman" or mistakenly believed he could complete the contract. *Id.; see State v. Schifani*, 92 N.M. 127, 129, 584 P.2d 174, 176 (Ct.App.1978) (holding that, in a prosecution for fraud and embezzlement, the testimony of witnesses who had dealings with the defendant similar in nature to the victims' dealings with the defendant was admissible as relevant to the issue of the defendant's fraudulent intent).

{8} We are unaware of any New Mexico cases addressing whether Rule 11–404 bars a defendant from offering evidence of prior lawful business dealings to attempt to rebut the state's evidence of fraudulent intent. However, we are persuaded by out-of-state authority addressing this issue that Defendant may introduce such evidence of lawful business dealings to rebut the prosecution's evidence of fraudulent intent under Rule 11–401 NMRA (defining "relevant evidence" as "evidence having any tendency to make the existence of" any consequential fact more or less probable) and Rule 11–402 NMRA (providing that relevant evidence is generally admissible). *See, e.g., United States v. Thomas*, 32 F.3d 418, 421 (9th Cir.1994) (observing that defendants are entitled "to present, within reason, the strongest case they are able to marshal in their defense" which includes testimony of previous lawful behavior to negate fraudulent intent); *United States v. Shavin*, 287 F.2d 647, 654 (7th Cir.1961) (same); *Bogren v. State*, 611 So.2d 547, 550–51 (Fla.Dist.Ct.App.1992) (holding that testimony of satisfied travel agency customers was relevant to the issue of the defendant's intent in accepting advance payments for travel when the travel agency was on the brink of collapse); *State v. Marinos*, 45 Ohio App.2d 312, 345 N.E.2d 76, 79 (1975) (holding that it was prejudicial error to exclude the testimony of satisfied customers during the three-month period when the defendant allegedly engaged in fraud because the excluded testimony would rebut evidence introduced by the state on the question of fraudulent intent).

{9} The State argues that, even if the district court erred in excluding the testimony under Rule 11–404, the testimony was also properly excluded under the balancing requirements of Rule 11–403 NMRA, as cumulative and a waste of time. *See* Rule 11–403 (providing that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence"); *State v. Nguyen*, 1997–NMCA–037, ¶ 7, 123 N.M. 290, 939 P.2d 1098 (observing that, even if evidence is admissible under Rule 11–404(B), the court must weigh the probative value of the evidence against its prejudicial effect pursuant to Rule 11–403 before deciding to admit the evidence). We do not agree.

{10} First, we disagree that the testimony of a satisfied customer is cumulative to Defendant's other evidence consisting of her own testimony and that of her accountant. *See State v. Balderama*, 2004–NMSC–008, ¶ 36, 135 N.M. 329, 88 P.3d 845 (holding that the court erred in excluding testimony as a "waste of time" when the testimony was relevant to the essential element of deliberate intent, and it was not cumulative); *Chacon v. State*, 88 N.M. 198, 200, 539 P.2d 218, 220 (Ct.App.1975) (holding that evidence which came from two witnesses who were not connected to the defendant or his family was not

cumulative even if the testimony appeared to be identical to that offered by the defendant); *Thomas*, 32 F.3d at 421 (holding that the customers benefitted by the defendant's actions were entitled to testify and that such testimony was not cumulative "of the abstract expert testimony proffered by the defendant's accountant").

{11} Second, we disagree that the district court, in the exercise of its discretion, could exclude the testimony in order to prevent a "parade of witnesses who had bad and good experiences with defendant." Indeed, the district court may exercise its discretion by limiting the number of satisfied and dissatisfied customers and excluding the testimony of any remaining customers as cumulative. However, the district court's authority to limit the number of witnesses does not alter our holding that the court abused its discretion in this case by refusing to allow Defendant to present the testimony of at least one satisfied customer. We recognize that in some cases fraudulent intent may be implied by the act itself, such as embezzlement by a bookkeeper with access to an employer's funds. *See Bogren*, 611 So.2d at 548. However, in cases such as this one, in which the alleged fraudulent activity involves the acceptance of advance payments from customers while the business is experiencing financial difficulties, the trier of fact must determine whether the defendant's actions were motivated by poor business judgment or by an intent to wrongfully and criminally obtain funds from vulnerable customers. *See Shavin*, 287 F.2d at 654 (observing that, in a close question of whether the defendant acted with fraudulent intent or in good faith, it was error for the district court to refuse to allow the defendant to introduce evidence of other legitimate business transactions); *Bogren*, 611 So.2d at 550.

{12} We therefore hold that the court abused its discretion in excluding the testimony of a satisfied customer as extrinsic evidence of character under Rule 11–404 because its exclusion precluded Defendant from an opportunity to fully develop a major element of her defense. *See Stanley*, 2001–NMSC–037, ¶ 24, 131 N.M. 368, 37 P.3d 85 (holding that the "denial of an opportunity for [d]efendant to develop a major part of his

defense was an abuse of discretion"); *see also State v. Saavedra*, 103 N.M. 282, 284, 705 P.2d 1133, 1135 (1985) (holding that the district court abused its discretion in refusing to admit evidence that was highly probative on the issue of defendant's improper identity defense and crucial to the defendant's principal theory of defense). In light of our disposition, we do not reach Defendant's arguments under the United States and New Mexico Constitutions. *See State v. Self*, 88 N.M. 37, 40, 536 P.2d 1093, 1096 (Ct.App. 1975). We reverse and remand for a new trial to allow Defendant to introduce the testimony of at least one satisfied customer.

## *Sufficiency of the Evidence*

{13} Because Defendant would be entitled to dismissal of the charges against her if we were to find in her favor regarding the sufficiency of the evidence, we address this issue. *See State v. Santillanes*, 109 N.M. 781, 782, 790 P.2d 1062, 1063 (Ct.App. 1990). When reviewing a claim of insufficiency of the evidence, we must determine whether substantial evidence, either direct or circumstantial, exists to support a guilty verdict beyond a reasonable doubt for every essential element of the crimes at issue. *See State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We review the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction and disregarding all evidence and inferences to the contrary, to ensure that a rational jury could have found each element of the crime established beyond a reasonable doubt. *Id.; see State v. Orgain*, 115 N.M. 123, 126, 847 P.2d 1377, 1380 (Ct.App.1993).

{14} We consider whether the evidence is sufficient to support Defendant's convictions for fraud and embezzlement. "Fraud consists of the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations." NMSA 1978, § 30–16–6 (1987). "Embezzlement consists of the embezzling or converting to his own use of anything of value, with which he has been entrusted, with fraudulent intent to de-

prive the owner thereof." NMSA 1978, § 30–16–8 (1995).

{15} To convict Defendant of embezzlement, the State had to prove beyond a reasonable doubt that Defendant was entrusted with money that she converted to her own use and, at the time Defendant converted the money, she fraudulently intended to deprive the owner of it. *See* UJI 14–1641 NMRA. " 'Converting something to one's own use' means keeping another's property rather than returning it, or using another's property for one's own purpose [rather than] ... for the purpose authorized by the owner." *Id.* " 'Fraudulently intended' means intended to deceive or cheat." *Id.*

{16} To convict Defendant of fraud, the State had to prove beyond a reasonable doubt that (1) Defendant, by any words or conduct, made a promise she had no intention of keeping or misrepresented a fact to the victims, intending to deceive or cheat them and, (2) because of the promise or misrepresentation and the victims' reliance on it, Defendant obtained money belonging to someone other than Defendant. *See* UJI 14–1640 NMRA.

{17} Count 1 is directed at the $40,000 paid by the Gamboas for their cabinet package. Count 2 is directed at the money paid by the Gamboas for the granite countertops and kitchen hood. Count 3 is directed at the $6500 paid by the Miller–Loyds, and Count 4 is directed at the $29,726.49 paid by the Adamses.

{18} The State presented evidence at trial that Danny Gamboa paid Defendant an initial deposit of $2000 on October 12, 1998, and another payment of $40,000 on February 19, 1999 to design and build cabinets for the Gamboas' house. Gamboa testified that, on September 24, 1999, he made an advance payment of $10,525.50 to pay one-half of the cost of the granite countertops. He paid an additional $3442 in September 1999 for a hood for the top of his stove. While extending the deadline into October and November 1999, Defendant continued to assure the Gamboas that the cabinets would be forthcoming, but the cabinets failed to arrive. Negotiations continued into December. The Gamboas never received the cabinets, the granite countertops, or the hood, and Defendant never refunded their money. The Gamboas' attorney testified that he attempted to work with Defendant to have the cabinets delivered, but the cabinets were never produced.

{19} Kimela Miller–Loyd testified that she visited Defendant's showroom in October 1999, and Defendant prepared an estimate for the work that Miller–Loyd requested. Miller–Loyd believed that the price was too high. In early December, Defendant sent a flyer offering discounts. Miller–Loyd again met with Defendant who offered additional cost-saving ideas. Defendant offered Miller–Loyd a price of $6500. Defendant informed her that this price, which represented a 10% discount, required Miller–Loyd to pay in advance, in full. Miller–Loyd made full payment. Miller–Loyd testified that Defendant's actions in coming to her house, making drawings, and representing that she was capable of doing the cabinets induced Miller–Loyd to pay the $6500.

{20} In late February 2000, Defendant told Miller–Loyd that she was going out of business but assured her the cabinets would be completed. Over the next month, Miller–Loyd attempted to contact Defendant without success. In September 2000, Miller–Loyd discovered that Defendant had declared bankruptcy and did not list Miller–Loyd as a creditor. Defendant later contacted Miller–Loyd offering to refund her money, but, after Miller–Loyd indicated she would accept the offer, Defendant did not contact her again. Miller–Loyd never received any cabinets in exchange for her $6500 payment.

{21} To the extent Defendant challenges her convictions in Count 4, we review the evidence supporting those convictions as well. There is evidence that Terry Adams met with Defendant on January 19, 2000 about possible cabinetry work. Adams paid Defendant $1500 for plan drawings with the understanding that money would be refunded if Adams decided to purchase the cabinets. The next day, January 21, 2000, Adams agreed to have Defendant build the cabinets and paid Defendant $29,726.49 in advance.

{22} The following Monday, Adams was informed that Defendant's business was having trouble and she called her bank to stop payment on the check. Defendant and Adams spoke, and Defendant tried to assure Adams of her credibility. Adams informed Defendant that she no longer wanted the cabinets but would pay the $1500 for drawings already completed. Adams gave Defendant's daughter a second check for $1500 on Thursday. Defendant admitted that she also deposited the second $1500 check written by Terry Adams.

{23} Defendant never told Adams that she had deposited, and cashed, the $29,726.49 check. Defendant's bank sought reimbursement from the Adamses because Defendant had already withdrawn the funds. After Defendant's bank instituted litigation, the Adamses had to pay the bank $24,000 in settlement. Defendant never provided the Adamses with any cabinets or additional goods and services beyond the initial drawings. Defendant never reimbursed the Adamses.

{24} Defendant claims that her convictions must be reversed because the State failed to introduce direct evidence showing that she had the criminal intent to defraud. We disagree because intent is usually established by circumstantial evidence. *See State v. James,* 109 N.M. 278, 280, 784 P.2d 1021, 1023 (Ct. App.1989) (affirming the defendant's conviction for embezzlement and observing that "[t]he fact that the evidence is circumstantial makes no difference"); *State v. Gallegos,* 109 N.M. 55, 66, 781 P.2d 783, 794 (Ct.App.1989) (stating that intent is usually inferred from the facts of the case, not direct evidence); *State v. Gregg,* 83 N.M. 397, 399, 492 P.2d 1260, 1262 (Ct.App.1972) (holding that there was substantial evidence of the defendant's fraudulent intent even though the evidence was circumstantial). In this case, Defendant's failure to complete the work for the Gamboas, the Miller–Loyds, and the Adamses is circumstantial evidence of fraudulent intent, especially in light of the evidence that Defendant's business was in a precarious financial position as early as March 1997. *See McCallum,* 87 N.M. at 461, 535 P.2d at 1087 (stating that "[t]he fact that defendant entered into many contracts which he failed to complete shows that either he was aware of the risks, that he was aware of his capabilities, or that he could not have believed that he would complete the contracts. The defendant's proceeding to contract in spite of his awareness is evidence of his fraudulent intent"); *cf. McCary v. Commonwealth,* 42 Va.App. 119, 590 S.E.2d 110, 114–15 (2003) (holding that sufficient evidence supported a finding of the defendant's fraudulent intent based upon a showing of the defendant's unfulfilled promises to complete two construction contracts, the lack of communication between the defendant and the homeowners, and the defendant's failure to inform the homeowners of his financial difficulties).

{25} Moreover, additional evidence introduced at trial supports a finding of fraudulent intent by rebutting Defendant's contention that she was a legitimate businesswoman who was, at most, guilty of poor business judgment. The State introduced evidence that Defendant purchased a car for her daughter using business funds in June 1999. Defendant purchased the car from Danny Gamboa for $13,429 by writing a check on a Kitchen N' Bath Design account. Defendant told Gamboa that he could cash the check when the project was complete or destroy the check and take the amount off of the final payment due for the cabinetry work.

{26} Evidence was also introduced that Defendant withdrew large amounts of cash from her business, although she claimed that the money was used for business purposes. Defendant admitted that she occasionally paid herself commission before completing the work even though her business was failing. She also admitted that she purchased a ticket for a trip to Hawaii out of the proceeds of the Adamses' check although she claimed the trip was to interview for a possible job. Finally, Defendant's accountant testified that Defendant did not file a corporate tax return in 1998 or 1999, and there were several tax liens against Defendant's business because Defendant had failed to pay requisite payroll taxes. This evidence, when viewed in the light most favorable to conviction, is sufficient to support the jury's finding that Defendant acted with fraudulent intent.

{27} Defendant also argues that her convictions must be reversed because "uncontroverted evidence" shows that she repeatedly performed on her contracts and that she tried to negotiate a fair settlement with the injured parties. We are unpersuaded because Defendant's alleged efforts to reach a settlement, if believed by the factfinder, do not warrant reversal as a matter of law. *See Schifani*, 92 N.M. at 131–32, 584 P.2d at 178–79 (holding that whether the defendant ultimately repaid the victim is irrelevant to the defendant's conviction for fraud and embezzlement because the crimes are complete when the defendant fraudulently obtains the money or wrongfully converts it to his own use). Furthermore, the issue of whether Defendant made good-faith efforts to fulfill her contractual obligations is one of credibility that must be resolved by the jury as finders of fact and they are free to reject Defendant's version of the events. *James*, 109 N.M. at 280–81, 784 P.2d at 1023–24.

## Other Issues for Retrial

{28} Having reviewed the evidence in the light most favorable to the verdict and concluding that there was sufficient evidence to support Defendant's convictions beyond a reasonable doubt, we address the remainder of Defendant's contentions that may arise again on retrial.

### Double Jeopardy

{29} Defendant was charged with four counts of fraud and, in the alternative, four counts of embezzlement. On Counts 2 and 4, she was convicted of both the fraud and embezzlement alternatives. The State is authorized to charge in the alternative. *See State v. Pierce*, 110 N.M. 76, 86, 792 P.2d 408, 418 (1990). However, Defendant's convictions for both alternatives violate her right to be free from double jeopardy. *See State v. Cooper*, 1997–NMSC–058, ¶¶ 55, 57, 124 N.M. 277, 949 P.2d 660; *cf. State v. Kenny*, 112 N.M. 642, 651, 818 P.2d 420, 429 (Ct.App. 1991) (affirming the defendant's conviction for one count of aggravated battery because even though the jury found him guilty under two alternatives, the district court corrected any confusion by indicating that the defen-

dant was convicted of only one count of aggravated battery). If, upon retrial, the jury again convicts Defendant of alternatives on any count, one alternative conviction must be vacated. *See Pierce*, 110 N.M. at 86–87, 792 P.2d at 418–19. The double jeopardy violation cannot be cured merely by imposing one sentence for both alternatives because " 'the second conviction, even if it results in no greater sentence, is an impermissible punishment.' "*Id.* (quoting *Ball v. United States*, 470 U.S. 856, 864–65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)). As both the fraud and embezzlement offenses are the same degree felonies, we express no opinion as to which alternative conviction would need to be vacated. *Cf. State v. Santillanes*, 2001–NMSC–018, ¶¶ 9, 15, 130 N.M. 464, 27 P.3d 456 (stating that the general rule is to vacate the conviction and any sentence imposed for the lesser offense).

### Limitation of Cross–Examination of Danny Gamboa and Exclusion of Extrinsic Evidence on the Issue of Gamboa's Bias

{30} Defendant claims that the district court erred in limiting her cross-examination of Danny Gamboa and in excluding extrinsic evidence as to Gamboa's motive and bias. The admission or exclusion of evidence is within the sound discretion of the district court and we will not overturn its determination absent an abuse of that discretion. *Stanley*, 2001–NMSC–037, ¶ 5, 131 N.M. 368, 37 P.3d 85. We will affirm the ruling unless it is "clearly untenable or not justified by reason." *Woodward*, 121 N.M. at 4, 908 P.2d at 234 (internal quotation marks and citation omitted).

{31} Defendant claims that her cross-examination of Danny Gamboa was unduly restricted because she was not allowed to ask him about a pending criminal investigation or a contract dispute between Gamboa and Urena, who ultimately supplied the cabinets for Gamboa's home. Our review of the record indicates that Defendant never invoked a ruling from the district court on these matters and thus failed to preserve any objection to the court's decision to exclude these lines of questioning. *See State v. Trujillo*, 2002–NMSC–005, ¶ 13, 131 N.M. 709, 42 P.3d 814

(refusing to address the defendant's confrontation clause concerns because he failed to object to the admission of evidence on confrontation grounds); *State v. Varela,* 1999–NMSC–045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (holding that a timely and specific objection is necessary to preserve error). To the contrary, the transcript indicates that defense counsel specifically agreed not to ask about the criminal investigation unless it became relevant at some later point. Defendant does not contend that either party raised the issue later during the trial. Defense counsel also initially agreed that the contract dispute between Gamboa and Urena was irrelevant. Later, during cross-examination of Urena, Defendant stated that she might seek to bring in evidence of the contract dispute. However, Defendant made this statement in response to the State's attempt to ask Urena about the amount Gamboa agreed to pay him for the cabinets. The State was attempting to establish the amount Gamboa lost in his dealings with Defendant. Once the court determined that the amount Gamboa paid to Urena was not relevant to the issue of any criminal behavior by Defendant, Defendant no longer sought to introduce any evidence of the contract dispute between Urena and Gamboa. As these issues were not preserved, we do not express an opinion as to whether, on retrial, Defendant should be allowed to introduce evidence of the contract dispute between Urena and Gamboa or any alleged criminal investigation concerning Gamboa. *See State v. Mireles,* 119 N.M. 595, 597, 893 P.2d 491, 493 (Ct.App. 1995) (declining to address objections that were not made to the district court and thus were not preserved).

{32} Defendant also claims that she should have been allowed to question Danny Gamboa about a victim's restitution request form completed by the district attorney's office. Defendant claims that she sought to introduce the restitution form to show Gamboa's direct interest and bias by showing that Gamboa initiated prosecution to obtain reimbursement. The State argued that the form was inadmissible because Gamboa never signed it and it was only for internal use by the district attorney's office.

{33} We hold that the court did not abuse its discretion in excluding the question based upon its finding that any inconsistency between the $80,000 claimed on the restitution request and the $55,000 loss Gamboa asserted at trial was irrelevant to the issue of Gamboa's bias. We also note that the court informed Defendant that she could ask about bias by asking Gamboa, "You're out at least $55,000; you want your money back[?]" Even though invited to do so, defense counsel did not question Gamboa further about any money he wanted to recover from Defendant. Therefore, Defendant waived any objection based upon exclusion of the restitution request sheet. *Cf. State v. Mora,* 1997–NMSC–060, ¶¶ 45–46, 124 N.M. 346, 950 P.2d 789 (holding that the defendant waived his claim that the State's late disclosures prevented him from effectively cross-examining certain witnesses because the defense failed to recall any witness when he was given the opportunity to do so).

{34} Finally, Defendant contends that she was improperly prevented from questioning two other witnesses about Gamboa's intense dislike of Defendant. We disagree as to the first witness—Munoz, because the transcript indicates that Defendant failed to preserve any such objection. The transcript indicates that the court did allow Defendant to ask this witness about excessive demands and changes made by Gamboa which would be evidence of Gamboa's dislike. However, Defendant never asked any further questions about demands or changes once the court permitted this line of questioning.

{35} As to Urena, Defendant claims she should have been able to ask him about a statement made to him by Gamboa that Gamboa was pleased Defendant was arrested. This question might be admissible to establish bias or motive on the part of Gamboa. *See State v. Lovato,* 91 N.M. 712, 714, 580 P.2d 138, 140 (Ct.App.1978). However, the court did not abuse its discretion in disallowing the question because the inquiry appears cumulative of other evidence that Gamboa did not like Defendant and, in light of Gamboa's claim that Defendant defrauded him, it was relatively lacking in probative value. *See* Rule 11–403; *Lovato,* 91 N.M. at 715, 580 P.2d at 141 (observing that extrinsic

evidence showing a witness's bias or motive to testify falsely is admissible but affirming the court's decision to exclude the tendered testimony as cumulative); *cf. State v. Marquez,* 1998–NMCA–010, ¶ 24, 124 N.M. 409, 951 P.2d 1070 (stating that the district court may exclude cumulative evidence).

### Amendment of the Indictment

{36} Defendant contends that the court erred in amending the indictment to add new charges and to expand the scope of the charges without notice. We decline to address this issue in light of our decision to reverse Defendant's convictions and remand for a new trial. *See State v. Roman,* 1998–NMCA–132, ¶ 16, 125 N.M. 688, 964 P.2d 852 (stating that this Court will not usually reach out to decide issues unnecessarily).

### Conclusion

{37} We hold that Defendant should have been allowed to introduce testimony from at least one satisfied customer. We further hold that Defendant's alternative convictions for fraud and embezzlement violate her right to be free from double jeopardy. Accordingly, we vacate the judgment of the district court. Because the evidence was sufficient to support Defendant's convictions, we remand this case for a new trial to be conducted in a manner consistent with this opinion.

{38} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and MICHAEL E. VIGIL, Judges.