This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                           **NO. 33,608**

**GERALD JOHNSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stanley Whitaker, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

The Appellate Law Office of Scott M. Davidson, Ph.D., Esq.
Scott M. Davidson
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**GARCIA, Judge.**

{1} Defendant appeals his conviction for four counts of criminal sexual penetration of a minor (CSPM), two counts of criminal sexual contact of a minor (CSCM), three counts of kidnapping, and six counts of child abuse. He asserts that: (1) the original indictment provided by the State was insufficient to inform him of the nature of the charges against him; (2) amendments to the indictment after the trial had begun denied him due process; (3) the conduct on which the kidnapping conviction was based was incidental to the CSPM, violating his right to protection from double jeopardy; (4) there was insufficient evidence to sustain a jury verdict of child endangerment based upon showing pornography to minors; (5) there was insufficient evidence to sustain a jury verdict of CSPM; (6) the district court improperly allowed physician testimony containing hearsay and unfairly prejudicial information; (7) Defendant was denied effective assistance of counsel; (8) the district court erred in excluding testimony of the children's grandfather; (9) the district court erred in excluding criminal juvenile records; (10) the district court erred in denying Defendant's motion for a mistrial; and (11) the cumulative errors denied Defendant the right to a fair trial. We affirm in part, reverse in part, and remand to the district court for proceedings in accordance with this Opinion.

**BACKGROUND**

**{2}** Defendant was convicted of multiple counts of sexual assault and child abuse perpetrated against Y.J., and three additional minor children, T.F., W.F., and Q.F., with whom he and the mother of the children (Mother) were living. T.F., Y.J., and W.F. all testified at the trial. The parties are aware of the facts and procedural background in this case. Due to the numerous charges and convictions at issue in this appeal, we reserve any further discussion of the necessary facts and background for the analysis.

## ANALYSIS

## I. THE VARIOUS INDICTMENTS

**{3}** The original grand jury indictment (Original Indictment) charged Defendant with ten counts of CSPM, three counts of kidnapping, seven counts of child abuse, and three counts of CSCM. Defendant moved to dismiss the Original Indictment on due process and double jeopardy grounds. In response and prior to trial, the State agreed to amend the Original Indictment by dropping certain count(s) and narrowing the time frame for other counts (Amended Indictment). It is not entirely clear from the record, however, the full extent or exact details of the Amended Indictment.[1] Near the

---

[1]While Defendant filed a motion to dismiss the Original Indictment and also maintains that he requested a bill of particulars from the State, the State responded by narrowing the time frame of the counts charged and eliminating certain charge(s). However, Defendant neglects to identify or otherwise provide any portion of the record below reflecting the details of these pretrial changes to the Original Indictment.

conclusion of the State's case in chief, the State sought to modify the Amended Indictment to conform with the testimony of the State's witnesses by amending the two counts of CSPM perpetrated by sexual intercourse into two counts of CSPM perpetrated by digital penetration and by amending the two counts of CSPM perpetrated by fellatio into two counts of CSPM perpetrated by digital penetration.

{4}	Defendant presents two arguments with regard to the evolving versions of the indictment in this case: (1) the Original Indictment violated his due process rights as it did not apprise him of the nature of the charges against him and prevented him from protecting himself against double jeopardy, and (2) the district court erred in allowing the State to modify the Amended Indictment after the close of the State's case. Questions addressing due process protections are reviewed de novo, including those in the context of the sufficiency of an indictment. *State v. Tafoya*, 2010-NMCA-010, ¶ 7, 147 N.M. 602, 227 P.3d 92.

**1.	Sufficiency of the Original Indictment**

{5}	While we recognize that Defendant appeals the sufficiency of the Original Indictment, we have explained that the charges contained in the Original Indictment were, just before trial, modified by the State in response to Defendant's motion to

*See* Rule 12-213(A)(3) NMRA (requiring Defendant, as the appellant, to provide this Court with relevant citations to the record proper). As a result, we accept the State's description of the Amended Indictment.

4

dismiss and did not reflect the same charges upon which Defendant was actually tried pursuant to the Amended Indictment. Accordingly, the Original Indictment is not relevant to Defendant's appeal as these charges were not those upon which he was ever tried. *See State v. Gardea*, 1999-NMCA-116, ¶ 11, 128 N.M. 64, 989 P.2d 439 ("[I]t is universally held that filing an amended criminal information constitutes an abandonment of the initial information."). It is not entirely clear whether the Amended Indictment was informally filed in district court or whether the district court orally allowed the amendments prior to trial as the record contains only an "amended grand jury indictment" devoid of any file stamp. Defendant does not dispute that the Amended Indictment was the charging document utilized at trial. As Defendant does not take issue with the procedure in which the Amended Indictment was recognized by the district court and also acknowledges that the State did indeed amend the Original Indictment, we will decline to reach the sufficiency of the Original Indictment because of Defendant's acknowledgment that it was narrowed and superceded by the Amended Indictment prior to trial. *See id.*

{6}     In the event Defendant intended to appeal the sufficiency of the Amended Indictment, Defendant provides no citation to any portion of the record where he made or preserved any argument regarding the sufficiency of the Amended Indictment. In order to preserve this issue for appeal, Defendant was required to lodge an objection

5

that specifically apprised the district court of the nature of the claimed error regarding the Amended Indictment that would invoke an intelligent ruling thereon. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. Pursuant to Rule 12-213(A)(4), appellants are required to provide this Court with "a statement explaining how the issue was preserved in the court below[.]" "We generally do not consider issues on appeal that are not preserved below." *State v. Garcia*, 2005-NMCA-065, ¶ 6, 137 N.M. 583, 113 P.3d 406. Additionally, we will not search the record to verify if an issue was preserved where an appellant does not provide the basis for reversal, including any citations to the record below. *State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829. While we do have the discretion to review unpreserved claims for fundamental error or instances where the fundamental rights of a party may have been affected, Rule 12-216(B)(2) NMRA, we decline to do so in this case as Defendant failed to provide a citation to any portion of the record where he continued to dispute the changes reflected in the Amended Indictment. *See* Rule 12-213(A)(3) (requiring an appellant to provide this Court with relevant citations to the record proper). Accordingly, we decline to review the sufficiency of the Amended Indictment or speculate regarding the possible application of the arguments that were made to attack the Original Indictment.

**2.      Further Modification to the Amended Indictment at Trial**

{7} Defendant argues that the district court erred and violated his due process rights in allowing the State to modify the Amended Indictment upon the completion of its case. Defendant asserts that the State's mid-trial modifications "substantially changed the nature" of the charges against him as the State began with "separate but indistinguishable counts of [CSPM] via sexual intercourse" and amended "to allege separate instances of [CSPM] only distinguishable via the alternative method of completing the crime[.]" Defendant maintains that these changes should have been required prior to trial.

{8} The record reflects that at the time the State moved to modify the Amended Indictment, it had not yet rested its case and it moved to amend in order to conform to the State's evidence presented at trial. The State sought to modify Counts 1 and 2, amending the method of perpetrating CSPM from sexual intercourse to digital penetration. Additionally, it sought to amend Count 5, 12, and 13, altering the method of perpetrating CSPM from fellatio to digital penetration. The State justified its motion arguing that (1) Defendant was well aware from pretrial interviews it provided in discovery that the children also accused Defendant of CSPM by digital penetration; (2) the time frames and the named victims for the amended charges had not changed; and (3) the penalty for the crime was the same. The State further elaborated that Defendant's defense would not change as Defendant had been arguing that all of the

7

allegations were created by Mother, as well as his previously offered reasons for the allegations by the children.

{9} Defendant responded, arguing that it was too late in the trial to amend the charges. The district court pointed out that Rule 5-204(C) NMRA allows it to make changes to the indictment in order to conform to the evidence as long as there is no prejudice to Defendant. The district court then asked Defendant to address the issue of prejudice, specifically substantial prejudice. Defendant argued that the time frames provided by the State were insufficient. The district court noted that the State was not amending the time frames. Defendant then argued that "to make such a huge change in [the] case . . . prejudices the defense." Defendant also argued that he was entitled to specific descriptions of each sexual assault allegation. As a further attempt to show prejudice, Defendant argued that the counts of CSPM perpetrated by sexual intercourse the State was seeking to amend should have been dismissed prior to trial because there was not enough evidence to support them at that time.

{10} The district court ruled that Defendant was not prejudiced by the State's proposed amendments to the indictment at trial as his only defense throughout the trial had been that the children and Mother fabricated all of the allegations. "The defense [was] that this didn't happen; it was all made up." The district court found that there was "no prejudice that . . . attacks the defense in this case." The district court

8

additionally found that the alternative method of penetration shown by the evidence fell within the same statutory charge of CSPM and the penalty, if convicted, remained the same. Accordingly, the district court allowed the State to amend the indictment pursuant to Rule 5-204(C) in order to conform with the evidence presented at trial.

{11} In a criminal case, a defendant must have notice of the charges against him and must be tried only on those charges. *State v. Johnson*, 1985-NMCA-074, ¶ 26, 103 N.M. 364, 707 P.2d 1174. Pursuant to Rule 5-204(C), the district court "may at any time allow the indictment . . . to be amended in respect to any variance to conform to the evidence." A variance between the allegation of the indictment which states the particulars of the offense, whether or not amended, and the evidence offered in support of the charged offense does not provide "grounds for the acquittal of the defendant unless such variance prejudices substantial rights of the defendant." *Id*. Under the rule, if the district court finds that the defendant is prejudiced by an amendment, the district court may postpone the trial or grant other proper relief under the circumstances of the case. *Id*. An amendment will not be deemed fatal unless it is of such a nature that it misleads the defendant in the preparation of his defense. *See State v. Ross*, 1983-NMCA-065, ¶ 13, 100 N.M. 48, 665 P.2d 310. The mere assertion of prejudice alone is insufficient to establish a basis for reversal because the defendant

is required to demonstrate actual prejudice. *State v. Romero*, 2013-NMCA-101, ¶ 9, 311 P.3d 1205.

{12} "Criminal sexual penetration" is defined by the Legislature as the "unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio[,] or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission." NMSA 1978, § 30-9-11(A) (2009). The State argued that, prior to trial, the various types of sexual penetration were contained in the pretrial interviews of the victims and that Defendant was fully aware of these interviews and the allegations of the numerous forms of sexual penetration. Section 30-9-11(A) provides for several alternative means in which penetration can occur and does not differentiate the form of penetration required for a proper statutory indictment. From the start of the trial, Defendant was on notice that he needed to defend against numerous different potential forms of criminal sexual penetration. Defendant's only argument of prejudice at trial was an assertion that "such a huge change in [the State's] case . . . prejudices the defense[,]" and that the charges of sexual penetration should have been dismissed with other counts that were eliminated before trial. On appeal, Defendant now asserts that he was also prejudiced as CSPM by digital penetration is a new offense, because CSPM "by sexual intercourse can be committed without digitally penetrating the victim."

10

Defendant has not asserted fundamental error occurred based upon this new argument that intercourse can be committed without digitally penetrating the victim. *See State v. Wilson*, 1993-NMCA-074, ¶ 23, 117 N.M. 11, 868 P.2d 656 (recognizing that the appellate courts may review issues raised for the first time on appeal if they involve questions of fundamental error). Because fundamental error has not been raised by Defendant and his new argument was never presented or addressed by the district court below, we will not address it for the first time on appeal.

{13}    The district court based its finding on the fact that the only defense Defendant presented at trial was that the children fabricated these allegations, through the influence of Mother or other family members, and that the sexual assaults never occurred. Because Defendant does not argue that his sole defense of fabrication would have been any different if the State had amended the indictment sooner, we agree that the amendments to conform to the evidence at trial were in compliance with Rule 5-204. We affirm the district court's determination that Defendant failed to establish the substantial prejudice requirement under Rule 5-204, and the State was allowed to modify the CSPM charges to conform with the evidence presented at trial.

**II.    DOUBLE JEOPARDY**

**1.    CSPM and Kidnapping Convictions**

{14} The jury convicted Defendant of three kidnapping charges: Counts 5, 6, and 7. "Kidnapping" in New Mexico is defined as the "unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception with intent . . . to inflict . . . a sexual offense on the victim." NMSA 1978, § 30-4-1(A)(4) (2004). These charges arose from the multiple sexual assaults Defendant perpetrated against T.F. Defendant challenges these convictions on double jeopardy grounds, arguing that the Legislature did not intend to charge Defendant with violations of multiple statutes for the same conduct based upon the evidence in this case. Specifically, Defendant argues that the conduct the State used to justify each kidnapping charge was unitary to the corresponding CSPM charge. Defendant alleges that the kidnapping and accompanying CSPM convictions constituted a "double-description case" and violated his double jeopardy protections guaranteed by the United States and New Mexico Constitutions. Defendant additionally argues that the conduct on which the kidnapping convictions are based was incidental to the commission of the CSPM.

{15} Defendant presents a double jeopardy and a related sufficiency of the evidence argument on appeal. It is well established in constitutional jurisprudence that this Court will avoid deciding constitutional questions unless they cannot be avoided under the circumstances. *See State v. Sanchez*, 2015-NMCA-084, ¶ 8, 355 P.3d 795.

12

While we conclude that Defendant's kidnapping convictions were improper as a matter of law and indeed necessitate vacation, we do so based upon the authority set forth in *State v. Tapia*, 2015-NMCA-048, ¶¶ 28-36, 347 P.3d 738 (recognizing that movement and restraint that is incidental and inherent to the commission of another crime and does not subject the victim to a substantial increase in the risk of harm beyond that inherent in the accompanying sexual assault offense is legally insufficient to constitute the separate crime of kidnapping), *cert. denied*, 2015-NMCERT-004, 348 P.3d 695. Thus, we now consider whether, in the light most favorable to the guilty verdicts, the movements or restraint occurring as part of Defendant's sexual assaults in the present case were sufficient as a matter of law to support the separate kidnapping convictions. *See id.* ¶ 29. We determine that the evidence presented to support Defendant's kidnapping convictions was insufficient as a matter of law. As a result, it is unnecessary to reach Defendant's related argument that his kidnapping convictions violated his double jeopardy protections under the state and federal constitutions.

{16}     This Court determined that "the Legislature did not intend to punish as kidnapping restraint or movement[s] that [are] merely incidental to another crime." *Id*. (alterations in original)(internal quotation marks and citation omitted); *see State v. Trujillo*, 2012-NMCA-112, ¶¶ 1-3, 289 P.3d 238 (applying statutory construction

13

principles to reject a kidnapping charge that was incidental to the force or coercion aspects of a burglary and aggravated battery incident occurring inside a victim's home), *cert. quashed* 2015-NMCERT-003, 346 P.3d 1163. Effectively, "the evidence of force used in kidnapping must be independent of the evidence of force used in CSP." *Trujillo*, 2012-NMCA-112, ¶ 11. The determination of whether conduct is incidental to the commission of another felony is fact dependent and based on the totality of the circumstances in the case. *Tapia*, 2015-NMCA-048, ¶ 29. In particularly complicated factual situations, we prefer that a jury resolve the issue. *Id*. The State has not argued that the factual situations in the present case were complicated and required resolution by the jury.

{17} In this case, T.F. testified that she was living at the Overland Townhome with Defendant when he committed CSPM via digital penetration. She stated that on one instance, "the boys" tried to enter the room, but they were unable to as the door was locked. T.F further testified that she never tried to leave the room because she "thought it was just something people did." Additionally, T.F. testified that when she and Defendant were residing at the Montgomery Park Apartments, Defendant committed more than two specific instances of CSPM by digital penetration. T.F stated that Defendant would tell her to go into Mother's bedroom and laid her on the bed. During one instance where Defendant "[tried] to put [his penis] in [her]

14

vagina[,]" he was laying on top of her. Although the State may have abandoned its pursuit of this specific conduct as a crime of CSPM via intercourse, it appears to be one of the factual episodes that overlap with one of the kidnapping charges. While T.F. does not refer to a specific instance connected to each sexual episode, she testified that the door to the bedroom was closed and Defendant did not otherwise hold her down or restrain her in any way.

{18}     In analyzing the New Mexico kidnapping statute, there are four distinct types of conduct that can constitute kidnapping: restraining, taking, transporting, or confining. *See* § 30-4-1(A). When we examine the conduct at issue in this case, we note that T.F. testified to different incidents with Defendant either lying on top of her, telling her to go to Mother's bedroom and being placed on the bed, closing the door, or locking the door.

{19}     We begin our analysis with the restraint element of the kidnapping statute. T.F. testified that in one incident, Defendant would lay on top of her while attempting to put his penis in her vagina. This Court recently concluded in *Tapia* that where the defendant would lay on top of the victim during the sexual assault and there was no other evidence of "restraint on her movement," the conduct was "incidental to the sexual assault perpetrated upon [the victim] and did not establish conduct that the Legislature intended to support a kidnapping conviction." 2015-NMCA-048, ¶¶ 30-

31. Here, with regard to restraint, T.F. testified to nothing more than Defendant lying on top of her during the commission of the sexual assault. Additionally, T.F. explicitly testified that Defendant did not hold her down or restrain her in any way. Thus, in light of *Tapia's* recent holding, we hold that the restraint in this case was incidental to the act of CSPM. *Id.*

{20} We next consider the transport element of kidnapping—whether Defendant took or transported T.F. during the commission of a sexual assault. Along with restraint, this Court has also considered whether any movement was incidental to a sexual assault. *Id.* ¶ 33. In *Tapia*, the defendant "made" the victim go or "took" the victim into another room in order to commit the sexual assault. *Id.* ¶ 35. In another instance in *Tapia*, the victim and the defendant "went" into another room. *Id.* Because these movements constituted leaving one room for another within the same residence and the victim was not subjected to a "substantial increase in risk of harm above and beyond that inherent in a sexual assault[,]" we determined the movements to be incidental to the sexual assault and not sufficient to support separate kidnapping convictions. *Id.*

{21} In the case before us, T.F. testified that Defendant "told [her]" to go into Mother's bedroom and laid her on the bed. As in *Tapia*, the movements here were from one part of the residence to another, and T.F. provided no testimony indicating

16

that there was an increase in harm above that already inherent in the act of CSPM. *Id*. Factually, the movement at issue here was more passive than that exhibited in *Tapia* as it was without any other physical action or indication of threat, coercion, or force on the part of Defendant. *See id*. ¶ 32. For this reason, we conclude that the movements described by T.F. were incidental to the CSPM and do not support a separate kidnapping conviction.

**{22}** Finally, we examine the confinement element of the kidnapping statute. The conduct at issue here was Defendant's act of closing and/or locking the bedroom door during the commission of the sexual assaults. While this Court has never explicitly examined the exact door-related conduct at issue here, we are able to take guidance from *Tapia*. *See* 2015-NMCA-048, ¶¶ 28-36. *Tapia* considered several factors in determining whether various conduct is incidental to a sexual assault: (1) whether the conduct increased the defendant's culpability beyond that inherent to a sexual assault; (2) whether the conduct increased the victim's risk of harm or the severity of the assault beyond that inherent to the sexual assault; and (3) whether the conduct served to minimize the defendant's risk of detection or difficulty in committing the offense. *See id*. ¶ 31.

**{23}** T.F. testified that, with regard to incidents at the Montgomery Park Apartments, the bedroom door was closed during the sexual assaults. During one sexual assault at

17

the Overland Townhome, the door was both closed and locked, and "the boys" were unable to enter the room. T.F. additionally testified that she never tried to leave the room. In examining a closed and/or locked door in light of the considerations in *Tapia*, we first examine whether the closed and/or locked door should automatically increase a defendant's culpability beyond that inherent to the sexual assault. *See id.* ¶ 31 (determining that the increased culpability factor was not met when the victim did not point to conduct that was longer or greater than that necessary to commit the assault). T.F.'s testimony did not indicate that the confinement in the bedroom was any longer or greater than necessary to commit the assault. *See id.* (discussing "whether a defendant intended to prevent the victim's liberation for a longer period of time or to a greater degree than that [necessarily present] to commit the [accompanying] crime" (internal quotation marks and citation omitted)). Secondly, T.F.'s testimony did not establish that the closed-door circumstances increased the severity of the sexual assault or the risk of harm posed to her. *See id.* (concluding that the severity or risk-of-harm factor was not met where the victim's testimony did not indicate that the conduct at issue heightened either component).

{24}     Finally, in examining the third test considered in *Tapia*—risk or detection—we conclude that the closed and/or locked door did appear to decrease Defendant's risk of detection and the difficulty in the commission of the sexual assault. *See id.*

(examining this third test in determining whether the conduct was incidental to the sexual assault). However, we will not automatically conclude that failure of this third test alone, under the totality of the circumstances, leads to conduct that is not clearly incidental to the commission of the sexual assault. *See id.* ¶ 29 (noting that the determination of incidental conduct is fact dependent and based on the totality of the circumstances). First, we recognize that the closure or locking of a bedroom door is the type of behavior, on its own, that would be common to incidents of sexual assault. This Court will not recognize a kidnapping charge every time a door is closed or locked during the commission of a felony, including sexual assault. In this particular case, the door was not used to prevent T.F. from escaping the room as she testified that she never tried to leave and also thought the sexual behavior that occurred "was just something people did." Similarly, the door was not used in an attempt to impede her rescue. While T.F. testified that "the boys" tried to enter the room but were precluded because of the locked door, there was no indication that the boys were attempting to intervene or stop the sexual assault being perpetrated on T.F. Accordingly, the confinement created in this particular case, by the closing and/or locking of the bedroom door, was factually and legally incidental to the sexual assaults. By itself, it did not support a kidnapping conviction in this case.

{25} For all the above stated reasons, we reverse Defendant's three kidnapping convictions and conclude that the restraint, movements, and confinement described in T.F.'s testimony were legally incidental to the sexual assaults. We determine that these actions did not exceed the incidental type of conduct inherent to a sexual assault and were not intended by the Legislature to support independent kidnapping convictions. As in *Tapia*, we highlight that we come to this conclusion as a matter of law due to the binding precedent established by this Court and the lack of complexity of the restraint, movement, and confinement evidence presented by the State in this case. *See id.* ¶ 36.

**2.      Alternative Theories of Child Abuse**

{26} The State ultimately charged Defendant with five counts of alternative theories of child abuse by endangerment in violation of NMSA 1978, Section 30-6-1(D) (2009), asserting intentional child abuse or in the alternative, negligent child abuse. The jury convicted Defendant of both negligent and intentional child abuse on the five counts: Counts 8, 11, 14, 15, and 17. The district court sentenced Defendant both on the intentional and negligent theories of child abuse for the five counts. For each count, the district court ordered that the sentences for intentional and negligent child abuse run concurrently. Defendant appeals these convictions and the accompanying sentences. Defendant argues that the convictions and sentences for both intentional

child abuse and negligent child abuse arose from the same conduct and violate his right to be free from double jeopardy. The State concurs with Defendant and concedes this issue on appeal. We agree.

{27} Child abuse by endangerment consists of "a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health[.]" Section 30-6-1(D)(1). While the State is entitled to charge a defendant in the alternative, the defendant's right to be free from double jeopardy is violated if the defendant is convicted on both alternatives. *State v. Mercer*, 2005-NMCA-023, ¶ 29, 137 N.M. 36, 106 P.3d 1283. "The double jeopardy violation cannot be cured merely by imposing one sentence for both alternatives because the second conviction, even if it results in no greater sentence, is an impermissible punishment." *Id*. (internal quotation marks and citation omitted). As both intentional and negligent child abuse not resulting in death or great bodily harm carry the same degree of felony exposure, "we express no opinion as to which alternative conviction[s] would need to be vacated." *Id*. We remand these convictions to the district court with instructions to dismiss one set of the alternative theories of child abuse by endangerment convictions and corresponding sentences that were imposed.

21

## III.  SUFFICIENCY OF THE EVIDENCE

{28}    Defendant asserts that the evidence the State presented at trial was insufficient to sustain a jury verdict on either of the CSPM convictions against T.F. and for three of the child endangerment convictions. "In reviewing the sufficiency of the evidence, [the appellate courts] must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted).

### 1.    Child Endangerment

{29}    Defendant argues that there was insufficient evidence to sustain the jury verdict as to Counts 8, 11, and 14 for child abuse by endangerment, resulting from Defendant showing pornographic videos to T.F., Y.J., and W.F. respectively. Defendant asserts that the "[v]iewing of pornography by a minor, while disagreeable, was not the type of conduct intended to be punished" criminally. Under the specific circumstances of this case, we disagree.

22

{30} "Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health[.]" § 30-6-1(D)(1). "Child abuse by endangerment, as opposed to physical abuse of a child, is a special classification designed to address situations where an accused's conduct exposes a child to a significant risk of harm, even though the child does not suffer a physical injury." *State v. Chavez*, 2009-NMSC-035, ¶ 15, 146 N.M. 434, 211 P.3d 891 (emphasis, internal quotation marks, and citation omitted). Our Supreme Court has determined that, due to the classification of child endangerment as a third degree felony, the New Mexico Legislature intended that criminal prosecutions "would be reserved for the most serious occurrences, and not for minor or theoretical dangers." *Id.* ¶ 16. Accordingly, the Supreme Court has adopted a more restrictive view of child endangerment, requiring that the defendant's conduct create a substantial and foreseeable risk of harm to the child, aligning appropriately with the Legislature's intent that only "conduct that creates a truly significant risk of serious harm to children" is punished. *Id.* ¶¶ 16, 22. In order to determine whether a defendant's conduct creates a substantial and foreseeable risk of harm to a child, the Supreme Court has provided several factors to consider: (1) the gravity of the threatened harm, (2) the Legislature's guidance that the

23

conduct is inherently perilous, and (3) the foreseeability or likelihood of the occurrence of harm. *Id.* ¶¶ 23, 25, 26.

{31}     Here, the conduct at issue was not, as Defendant frames it, the *viewing* of pornography by a minor, but was Defendant's purposeful act of *showing* pornography to the children prior to sexually assaulting them. In examining this conduct, we follow the Supreme Court's instruction and determine if there was a substantial and foreseeable risk of harm to the children. *Id.* ¶ 22. Here, the State was required to present evidence to prove a substantial and foreseeable risk that showing pornographic videos to the children endangered them. *See id.* ¶¶ 27, 32 (instructing that it is the state's burden to demonstrate that the conduct at issue created a substantial and foreseeable risk of harm to the children). As Defendant himself acknowledges, the reprehensibility of this conduct is not disputed. "But the question before [the appellate court] is whether these conditions created a substantial and foreseeable threat of serious injury." *Id.* ¶ 35.

{32}     The State elicited testimony from T.F. explaining that after Defendant showed her the pornographic videos, she "[thought] it was ok to . . . [l]et [Defendant] touch [her] . . . [b]ecause it was . . . on the movies." Thus, Defendant's use of pornography served to acclimate and reduce T.F.'s resistance to the sexual abuse and increased his ability to carry out the sexual assaults. This type of behavior has been identified by

24

our Supreme Court as "grooming." *See State v. Sena*, 2008-NMSC-053, ¶ 19, 144 N.M. 821, 192 P.3d 1198 (identifying "the process of manipulation often utilized by child molesters, intended to reduce a victim's or potential victim's resistance to sexual abuse . . . as grooming" (alterations, internal quotation marks, and citation omitted)).

{33}     In using pornography to reduce his victims' resistance to the sexual assaults, the severity and gravity of the conduct is not only apparent, as it serves to ensure the successful completion of a sexual assault, but the foreseeability and likelihood of harm resulting from this conduct is obvious for the same reason. To support this conclusion, the State offered the testimony of Dr. Renee Ornelas, who explicitly stated that "the effects of abuse on children are long lasting and . . . [are] a very difficult problem to treat, and it requires a long, intensive sort of therapy." She elaborated that a child who does not receive help "develop[s] these habits in ways of dealing with things that later they suffer very severe consequences for, and not to discount what harm they can do to others as they get older."

{34}     Finally, the New Mexico Legislature has independently determined that under Article 37 of the criminal statutes, the act of showing pornography to minors is "harmful." NMSA 1978, § 30-37-2(A) (1973). Article 37 relates to "sexually oriented material that is harmful to minors." *State v. Tufts*, 2015-NMCA-075, ¶ 13, 355 P.3d 32 (alteration, internal quotation marks, and citation omitted), *rev'd* 2016-NMSC-020,

__ P.3d ___. Section 30-37-2(A) specifically states that "[i]t is unlawful for a person to . . . provide to a minor . . . [a] motion picture film . . . which depicts nudity, sexual conduct, sexual excitement . . . and which is harmful to minors[.]" During her testimony, Y.J. recalled that the pornographic videos Defendant showed her depicted "other people having sex" and "private parts going into the girls." Accordingly, the State established that the pornographic videos Defendant showed the children fell within the illegal and harmful category articulated in Section 30-37-2(A).

{35} Under the specific circumstances of this case, (1) where there is explicit testimony that Defendant's conduct of showing pornography to his victims served to groom and reduce victim resistance to sexual acts and increased Defendant's ability to carry out the sexual assaults; (2) where the State presented expert testimony regarding the harmful effects that these sexual assaults could have; and (3) where the Legislature has explicitly stated that showing pornography to minors is harmful, we not only determine that the conduct created a substantial and foreseeable risk of harm to the children, but this is the type of conduct that the Legislature intended to criminally punish under Section 30-6-1(D)(1).

**2. CSPM Charges**

{36} The jury convicted Defendant of two counts of CSPM, re-numbered as Counts 2 and 3, by means of sexual intercourse perpetrated against T.F. occurring "on or

26

between the 1st day of January, 2005 and the 31st day of May, 2005." Defendant appeals these two re-numbered convictions, arguing that the evidence was insufficient to sustain the convictions for these two counts as T.F. did not testify to a specific time frame or residence where these particular sexual assaults occurred.

{37} Defendant was charged with CSPM pursuant to Section 30-9-11(D)(1). To convict Defendant of re-numbered Counts 2 and 3, the jury was instructed that it must find that the State proved beyond a reasonable doubt that: (1) "[D]efendant caused [T.F.] to engage in sexual intercourse"; (2) T.F. "was a child under the age of thirteen (13)"; (3) "[D]efendant's act was unlawful"; and (4) "[t]his happened in New Mexico on or between the 1st day of January, 2005 and the 31st day of May 2005." The jury was additionally instructed that "[s]exual intercourse [constitutes] the penetration of the vulva or vagina, the female sex organ, by the penis, the male sex organ, to any extent." As Defendant solely disputed the sufficiency of evidence with regard to the element of sexual intercourse, our analysis will be limited accordingly. *See State v. Garnenez*, 2015-NMCA-022, ¶ 15, 344 P.3d 1054 ("We will not address arguments on appeal that were not raised in the brief in chief and have not been properly developed for review.").

{38} Our review of the record indicates that T.F. testified that Defendant lived with her and her family for about six years, and Defendant and Mother ended their

27

relationship when T.F. was six or seven years old. The record reflects that the family lived at the Montgomery Park Apartments during the time period of re-numbered Counts 2 and 3, January 1, 2005, through May 31, 2005. She stated that while living at the Montgomery Park Apartments, Defendant "[tried] to put [his penis] in [her] vagina." T.F. elaborated that when Defendant sexually assaulted her, it would take place on the bed in Mother's room. T.F. explained that she was unclothed on her back, and Defendant laid on top of her, moving "back and forth." T.F. testified that this action "hurt" and caused her to bleed "on [her] vagina." T.F. later explained that the "last time" Defendant sexually assaulted her, "[h]e tried to put [his penis] in [her], and he just got real mad after." T.F. testified that while living at the Overland Townhome, Defendant only sexually assaulted her "with his fingers."

{39}    Defendant asserts that T.F.'s testimony is insufficient to support convictions of CSPM for re-numbered Counts 2 and 3 because "when pressed on cross[-]examination to clarify her testimony regarding the sexual intercourse [by penetration], T.F. testified that she could not remember where they occurred." While Defendant was unable to provide us with an accurate citation to the transcript, we located a portion of the record where, on cross-examination, the question was asked, "Did he try to put anything else inside of you at the townhome?" T.F. replied, "I think, yes." When asked why she thought this, she replied that she did not "really remember what

28

house [they] were at." In spite of this apparent discrepancy in T.F.'s recollection of her memory about what else may have occurred at the townhome, it is the responsibility of the jury alone to weigh the credibility of a witness. *See State v. Santillanes*, 1974-NMCA-092, ¶ 2, 86 N.M. 627, 526 P.2d 424. Viewing the sufficiency of the evidence in the light most favorable to the guilty verdict, we conclude that the testimony of T.F., describing two instances at the Montgomery Park Apartments where Defendant penetrated her by means of sexual intercourse, is sufficient to support Defendant's CSPM convictions.

## IV.   EXPERT MEDICAL TESTIMONY

{40}   Defendant argues that the district court abused its discretion in denying his motion to suppress the testimony of Dr. Ornelas, a pediatrician specializing in the treatment and diagnosis of sexual abuse in children. He additionally argues that Dr. Ornelas, in violation of the prohibition on hearsay, testified to information obtained from the children's aunt, which the aunt obtained from W.F.

{41}   We review the admission or exclusion of evidence for an abuse of discretion, and we will not disturb the ruling of the district court absent a clear abuse of its discretion. *Mercer*, 2005-NMCA-023, ¶ 6. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can

29

characterize it as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

**1.      Motion to Suppress**

{42}      Prior to trial, Defendant filed a motion to suppress the testimony of Dr. Ornelas, arguing that it was not scientifically reliable. Defendant asserted that "Dr. Ornelas' testimony is essentially an attempt to improperly vouch for the credibility of the alleged victim in this case. There is no physical evidence . . . nor are there any independent eyewitnesses, the only evidence . . . is the alleged victim's statement[.]" The district court denied the motion in part and granted the motion in part, allowing Dr. Ornelas to provide factual information regarding her medical exam, the medical history of the children, and her treatment of the children. However, the court ruled that in order for Dr. Ornelas to be declared an expert witness, the State would need to lay the proper foundation. During Dr. Ornelas' initial foundational testimony, defense counsel stipulated to qualifying Dr. Ornelas as an expert witness in the field of "pediatrics, child sexual abuse and treatment and the diagnosis of sexual abuse of children."

{43}      Defendant argues that the district court erred in denying his pretrial motion to suppress all testimony by Dr. Ornelas. At the outset, we note that the district court granted Defendant's motion in part, and to the extent the court denied the motion

regarding the propriety of Dr. Ornelas serving as an expert witness, Defendant later stipulated to her designation as an expert "in the field of pediatrics, child sexual abuse and treatment and the diagnosis of sexual abuse of children." However, Defendant neglected to provide any citation to the record of either the original motion or the district court's ruling on the original motion. Additionally, Defendant failed to provide any specific argument as to how the district court abused its discretion in allowing the State to present a factual foundation for expert witness testimony and ultimately recognizing Dr. Ornelas' ability to testify as an expert witness regarding the examination, diagnosis, and treatment of W.F. *See State v. Mendez*, 2010-NMSC-044, ¶ 22, 148 N.M. 761, 242 P.3d 328 ("[Our appellate courts] have relied on the foundation established by the party seeking to admit the hearsay testimony[,] that [the] testimony is admissible if it is reasonably pertinent for medical diagnosis or treatment." (alteration, internal quotation marks, and citation omitted)). Defendant has failed to further develop his argument that Dr. Ornelas' testimony regarding the medical exam, the medical history of the children, and her treatment of the children was not relevant to the State's case or required exclusion on the basis of prejudice. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 ("[T]his Court has no duty to review an argument that is not adequately developed."). Accordingly, Dr. Ornelas was properly qualified as an expert to testify about the

31

examination, diagnosis, and treatment of the children, and Defendant has failed in his burden to show error. We decline to further review this undeveloped argument regarding the pretrial motion to exclude all of Dr. Ornelas' testimony.

**2. Dr. Ornelas' Trial Testimony**

{44} Prior to Dr. Ornelas' trial testimony, Defendant also objected to her testimony on general hearsay grounds. However, the district court overruled this objection finding that the information was obtained as part of a medical diagnosis. During her testimony, Dr. Ornelas stated that she speaks to the caregivers of her child patients in order to obtain more detailed medical histories of the children that will aid her in diagnosis and treatment. Specifically with regard to W.F., she stated that the children's aunt provided her with details of his history of abuse, information the aunt appeared to have obtained from W.F. Dr. Ornelas then explained that she spoke to W.F., and he provided her with a detailed account of the sexual assualt. Dr. Ornelas additionally testified that she requests information regarding whether the alleged perpetrator has been incarcerated or has engaged in high risk behaviors such as intravenous drug use or sexual acts with prostitutes due to a concern that the perpetrator may expose the child to a sexually transmittable infection. In this case, Dr. Ornelas stated that the children's aunt informed her that the alleged perpetrator used intravenous drugs, engaged in sexual acts with prostitutes, and had been incarcerated.

At no time did Dr. Ornelas identify the alleged perpetrator or testify that she thought or knew Defendant to be the perpetrator. *See Mendez*, 2010-NMSC-044, ¶ 52 (recognizing that "[a]s a general matter, statements of fault or identity are inadmissible under the hearsay exception for purposes of medical diagnosis or treatment because they are not pertinent to treatment or diagnosis").

{45} Defendant asserts that the non-specific testimony regarding obtaining W.F.'s history of sexual abuse was inadmissible as it constituted double hearsay. Hearsay is a statement made outside of testimony at the trial at issue "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Rule 11-801(C) NMRA. Pursuant to Rule 11-802 NMRA, hearsay is inadmissible unless it falls within an exception under the New Mexico Rules of Evidence, a statute, or other Supreme Court rule. Under Rule 11-803(4) NMRA, an exception to the hearsay rule exists with regard to medical diagnosis or treatment. It states:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness[:]
>
> . . . .
>
> **4. Statement made for purposes of medical diagnosis or treatment.** A statement that
>
> > (a)   is made for—and is reasonably pertinent to—medical diagnosis or treatment, and
> > (b)   describes medical history, past or present symptoms, pain, or sensations, their inception, or their general cause.

33

*Id.* Our Supreme Court has clarified that hearsay testimony made to a medical provider in a sexual assault case is admissible if the district court has properly evaluated "the trustworthiness of [the victim's] statements, taking into consideration [the victim's] help-seeking motivation and the pertinence of such statements to medical diagnosis or treatment." *Mendez*, 2010-NMSC-044, ¶ 46. "[Our appellate courts] have relied on the foundation established by the party seeking to admit the hearsay testimony" in order to determine whether that testimony is " 'reasonably pertinent' for medical diagnosis or treatment." *Id.* ¶ 22 (applying the identical hearsay exception set forth in the previous version of Rule 11-803(4) to explain the analysis required to admit statements made by a sexual assault victim to a medical provider).

{46} In this case, Dr. Ornelas explicitly stated that it was important for her in the treatment and diagnosis of sexually abused children to know the extent of the sexual abuse as it can have long lasting behavioral effects that "require treatment and intervention." She elaborated that the effects of sexual abuse are " very difficult problem[s] to treat, and [they require] a long, intensive sort of therapy." Accordingly, we conclude that the evidence supports the district court's ruling that the sexual abuse history provided by W.F. to Dr. Ornelas was "trustworthy" and "reasonably pertinent" for her diagnosis, meeting the hearsay exception requirement established in *Mendez*. *Id.* ¶ 43 ("The [district] court must therefore carefully parse each statement made to

34

[the medical provider] to determine whether the statement is sufficiently trustworthy, focusing on the declarant's motivation to seek medical care and whether a medical provider could have reasonably relied on the statement for diagnosing or treating the declarant."); *see State v. Skinner*, 2011-NMCA-070, ¶ 12, 150 N.M. 26, 256 P.3d 969 ("[District] courts must closely scrutinize the exchange between the medical provider and patient to determine the statement's overall trustworthiness under Rule 11-803[(4)] in light of these two rationales [set forth in *Mendez*]." (alteration, internal quotation marks, and citation omitted)), *overruled in part on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. "We do not decide whether the double hearsay alone would be admissible were it not accompanied by other admissible statements [W.F.] made directly to the doctor."*In re Esperanza M.*, 1998-NMCA-039, ¶ 18, 124 N.M. 735, 955 P.2d 204. Defendant makes no specific trustworthiness or pertinence arguments further challenging the hearsay statements made to Dr. Ornelas by W.F. As a result, W.F.'s statements to Dr. Ornelas comply with the hearsay exception in Rule 11-803(4) and no error occurred when Dr. Ornelas testified about W.F.'s statements to her.

{47}     While the statements made by the aunt to Dr. Ornelas were also made for the purpose of medical diagnosis and treatment, they constituted double hearsay because they were based upon the prior out-of-court statements made by W.F. to his aunt. It

is this second layer of hearsay that Defendant also asserts the district court failed to properly address and overcome. Although we agree with this potential hearsay concern, the State argues that Defendant failed to object and preserve this evidentiary issue at trial. Defendant does not dispute this assertion or otherwise identify how the issue was preserved and ruled upon by the district court. Generally, evidentiary issues that were not preserved at trial will not be addressed for the first time on appeal. *See State v. Allen*, 2000-NMSC-002, ¶ 17, 128 N.M. 482, 994 P.2d 728 ("When an evidentiary issue is not properly preserved, our review is generally limited to questions of plain or fundamental error."). Because Defendant failed to establish that this evidentiary issue was preserved below and does not argue that plain or fundamental error occurred, we decline to review this matter further.

{48}     Finally, we recognize that the admissibility of hearsay statements by a victim must also satisfy the constitutional requirements of the Confrontation Clause, but Defendant makes no argument regarding his confrontation rights, and we will not address this issue as well. *In re Esperanza M.*,1998-NMCA-039, ¶ 15; *see State v. Correa*, 2009-NMSC-051, ¶ 31, 147 N.M. 291, 222 P.3d 1 ("On appeal, issues not briefed are considered abandoned, and [the appellate courts] do not raise them on [their] own."); *Garnenez*, 2015-NMCA-022, ¶ 15 ("We will not address arguments on appeal that were not raised in the brief in chief and have not been properly developed

36

for review."); *see also State v. Riley*, 2010-NMSC-005, ¶ 26, 147 N.M. 557, 226 P.3d 656 (stating that the issue of any denial of a defendant's Sixth Amendment right to confrontation may not be raised or addressed for the first time on appeal), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 54, 306 P.3d 426. W.F. did testify at trial regarding the details of the sexual assaults, and Defendant did have the opportunity to cross-examine him about those statements.

## V.    THE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

{49}    Defendant asserts that he was denied effective assistance of counsel when his attorney "failed to move to exclude prejudicial statements regarding [Defendant's] use of [intravenous] drugs and . . . sexual experience with prostitutes" that were made by the aunt to Dr. Ornelas. Alternatively, Defendant argues that counsel was ineffective by failing to object to the testimony regarding Defendant's high risk behaviors. We review ineffective assistance of counsel claims de novo. *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134.

{50}    In order to establish a prima facie case of ineffective assistance of counsel, a defendant must show that: "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *Id.* Defendant summarily asserts that the statements referring to his high risk behaviors

37

"were more prejudicial than probative in violation of Rule 11-403 [NMRA], admitted prior bad act testimony in violation of Rule 11-404(B) [NMRA], and created the risk that the jury would convict [Defendant] because he was a 'bad person.' " Beyond these summary statements in his brief in chief, Defendant does not develop or explain his arguments any further. In addition, how these arguments were preserved and otherwise ruled upon by the district court below has not been explained or addressed. *See State v. Lacey*, 2002-NMCA-032, ¶ 19, 131 N.M. 684, 41 P.3d 952 (recognizing that the failure to make a timely objection and invoke a ruling by the district court results in a failure to preserve the issue for appellate review). Finally, we will not address an argument that is unclear or underdeveloped. *See Gonzales*, 2011-NMCA-007, ¶ 19 ("[T]his Court has no duty to review an argument that is not adequately developed.").

## VI.    EXCLUSION OF TESTIMONY AND EVIDENCE

**1.    Grandfather's Testimony**

{51}    Defendant contends that the district court erred in excluding evidence that the children's maternal grandfather (Grandfather) abused unrelated children at a daycare center owned by the family. Alternatively, Defendant asserts that the district court erred in refusing to grant Grandfather use immunity for purposes of determining the relevance of his testimony. The admission or exclusion of evidence is within the

38

sound discretion of the district court. *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244. We review the ruling of the district court for an abuse of discretion and will not disturb it on appeal unless "the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *Id*. (internal quotation marks and citation omitted).

{52} During trial, Defendant revealed that one of his defenses was that Grandfather molested the children, and the children blamed Defendant for the abuse. Defendant argued that Grandfather molested unrelated children at a daycare center, and the children at issue in this case were present at the daycare center. Additionally, Defendant argued that the children may have obtained information regarding Grandfather's case before lodging the allegations against Defendant. Finally, Defendant asserted that Grandfather may be able to shed light on how the children were feeling and perhaps provide information demonstrating that the children may have "tailored their testimony in a certain way, that they might be able to help their grandfather out." For these reasons, Defendant sought to admit Grandfather's testimony and grant him use immunity.

{53} The district court noted that there had been no allegation against Grandfather with regard to the abuse of his grandchildren and ruled there would be no "mini trial on his case that's pending with regard to the allegation against" Defendant. The

district court denied Defendant's motion, finding that there was not sufficient evidence to support the defense's theory and justify admitting Grandfather's testimony. The court determined that this testimony would only serve to confuse the jury. Defendant called Grandfather to testify regarding the request for use immunity, and Grandfather asserted his Fifth Amendment privilege against self-incrimination. Defendant asked that Grandfather be granted use immunity, and the district court denied the request on the basis that Defendant could not request it, only Grandfather could request it, and Grandfather declined to make such a request.

{54}     Defendant neglects to provide any specific argument explaining how the exclusion of Grandfather's testimony constituted an abuse of discretion. He merely argues that Grandfather allegedly had a history of sexually abusing unrelated children, and he had access to the children in this case. Defendant generally cites to caselaw without any accompanying analysis. We decline to address this argument any further as we will not make Defendant's argument for him or guess at what his argument might be. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

40

{55}  However, in support of his argument that Grandfather should have been granted use immunity, Defendant cites Rule 5-116(A) NMRA, which governs witness use immunity and provides in relevant part:

> If a person has been or may be called to testify . . . in an official proceeding conducted under the authority of a court . . . , the district court . . . may issue a written order requiring the person to testify . . . notwithstanding the person's privilege against self-incrimination. The court may issue an order under this rule upon the written application of the prosecuting attorney, the accused, or upon the court's own motion.

Our Supreme Court addressed the question of whether a district court may grant use immunity to a defense witness over the objection of the state in *State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. The Court determined that in "limited circumstances" district courts are permitted to grant use immunity "with or without the concurrence of the prosecut[ion]." *Id*. ¶ 35. "Before granting use immunity to a defense witness over the opposition of the prosecution, district courts should perform a balancing test which places the initial burden on the accused." *Id.* ¶ 38. The burden requires the defendant to show that: (1) "the proffered testimony is admissible, relevant and material to the defense" and (2) without it, the defendant's "ability to fairly present a defense will suffer to a significant degree." *Id*. Once the defendant has met this burden, "the district court must then balance the defendant's need for the testimony against the government's interest in opposing immunity." *Id*.

41

{56} Defendant maintains that he met his burden under *Belanger* as he "showed that he intended to present the defense that either" Grandfather was the abuser of the children, the children's stress reactions were the result of interactions with and knowledge of Grandfather's history of sexual abuse toward children, or that the children learned of the specifics of sexual abuse through exposure to Grandfather. However, our review of the record reveals that Defendant provided no proffer to the district court as to what Grandfather's testimony would provide, as Defendant was required to do under *Belanger*. *Id.*; *see State v. Ortega*, 2014-NMSC-017, ¶ 10, 327 P.3d 1076 (concluding that a defendant had not met his burden under *Belanger* when he failed to make a proffer "as to what testimony" a witness would provide). Defendant merely presented theories to the district court that were "possible" or that Grandfather "maybe" would be able to provide enlightenment.

{57} While Defendant asserts that "the district court erred in [declining to grant] use immunity to [Grandfather] for the limited purpose of determining whether his testimony would benefit [Defendant] or would be relevant to any of his theories of defense[,]" this is not the appropriate procedure under these circumstances. Our Supreme Court has instructed that in such a situation when defense counsel is unable to make a proffer, he or she can request "immunity limited to an in camera hearing, which [allows] the district court to hear [the witness's] testimony and gauge its

42

importance." *Ortega*, 2014-NMSC-017, ¶ 10. A request for a limited in camera review hearing did not occur here. Accordingly, we determine that Defendant failed to meet his burden under *Belanger* and *Ortega*, and the district court did not abuse its discretion in declining to grant the request for use immunity.

**{58}** While we recognize that the district court erred in its ruling that Grandfather was the only party who was able to request use immunity, as Rule 5-116(A) permits the district court to grant use immunity on its own motion, we conclude that the district court's refusal to grant Grandfather use immunity can be affirmed on the basis of "right for any reason." *See State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (recognizing that the appellate courts will affirm the district court's decision if it is right for any reason, so long as it is not unfair to the appellant). Defendant failed to meet his burden under *Belanger* and was not entitled to the issuance of use immunity for Grandfather's testimony, even if it had been raised on the district court's own motion. 2009-NMSC-025, ¶ 38; *see Ortega*, 2014-NMSC-017, ¶ 10.

**2.      The Juvenile Records**

**{59}** Defendant argues that the district court erred in excluding evidence of the criminal juvenile records of Q.F. and W.F. as the records "pertained directly to potential impeachment" of witness credibility. Defendant asserts that the boys testified

to acts of abuse that were not witnessed by others and could not be corroborated, therefore, their juvenile records could have served to properly impeach their credibility. "We review the district court's evidentiary rulings for an abuse of discretion." *Garnenez*, 2015-NMCA-022, ¶ 29. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted).

{60}   Prior to cross-examination of W.F., Defendant sought to admit his juvenile criminal record based upon a pre-trial interview where he admitted to being arrested for shoplifting. The State disputed the contents of the pre-trial interview, arguing that such an admission was never made at the interview or contained within the transcript of the interview. The State denied that it knew of anything regarding W.F.'s juvenile record other than he was a suspect in a shoplifting incident. The district court denied Defendant's request to admit any criminal juvenile history of W.F. Additionally, we can find nothing in the record, nor does Defendant provide us with any citation to the record, discussing the existence of any juvenile criminal history for Q.F.

{61}   The New Mexico Rules of Evidence allow a party to attack the credibility of a witness through the admission of that witness's criminal conviction for any crime "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Rule 11-

44

609(A)(2) NMRA. The rules allow for the admission of juvenile adjudications to impeach a witness "only if (1) it is offered in a criminal case, (2) the adjudication was of a witness other than the defendant, (3) an adult's conviction for that offense would be admissible to attack the adult's credibility, and (4) admitting the evidence is necessary to fairly determine guilt, or innocence." Rule 11-609(D).

{62}    First, we note that while Defendant cites to caselaw that states that shoplifting constitutes a dishonest act, *see State v. Melendrez*, 1977-NMCA-131, ¶ 12, 91 N.M. 259, 572 P.2d 1267, Defendant's argument goes no further than merely stating, "[a]ll of the four pre-requisites for the admission of juvenile adjudications were met and it was error for the district court to deny [Defendant's] request to admit testimony of the alleged victim's criminal history" as it was useful for impeachment. Defendant did not fully complete the required analysis of Rule 11-609(D), and as this Court has previously stated, "[t]he mere assertion of an evidentiary rule is not argument." *State v. Fuentes,* 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181. Defendant provided no further showing in the record that the minor victims' alleged convictions would be admissible to attack an adult's credibility or the admission of W.F.'s shoplifting record was necessary to fairly determine Defendant's guilt or innocence. *See* Rule 11-609(D). As such, we decline to complete this analysis for Defendant when he never did so himself. *See Fuentes*, 2010-NMCA-027, ¶ 29; *see also Headley*,

45

2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). Additionally, insofar as Defendant also appears to assert that he was denied his right to confront the witnesses against him by merely citing relevant authority, we decline to review this argument as it was also inadequately developed. *See Gonzales*, 2011-NMCA-007, ¶ 19 (stating that "this Court has no duty to review an argument that is not adequately developed"); *see also Riley*, 2010-NMSC-005, ¶ 26 (noting that a defendant's Sixth Amendment right to confrontation may not be raised or addressed for the first time on appeal).

## VII.   MOTION FOR MISTRIAL FOLLOWING CLOSING ARGUMENTS

{63}     Following closing arguments, Defendant moved for a mistrial on the basis that the State improperly attacked defense counsel's credibility, which "invaded Defendant's right to effective assistance of counsel and his right to be presumed innocent until the jury [found] him guilty." While Defendant provides no citation to the record of either his motion or the district court's denial of the motion, he argues that the district court erred in denying Defendant's motion for a mistrial due to prosecutorial misconduct during closing arguments. Defendant asserts that the State's comments during its rebuttal closing argument constituted an improper attack on Defendant's trial counsel and denied Defendant the right to a fair trial. Specifically, Defendant contends that the State asserted that Defendant "currently had a drug

46

problem" and represented Defendant as a "bad person" in referring to him as "somebody like that." Additionally, Defendant argues that the State suggested that defense counsel was intimidating Y.J. on the witness stand. "We review the trial court's denial of the motion for mistrial for abuse of discretion[.]" *State v. Smith*, 2016-NMSC-007, ¶ 50, 367 P.3d 420.

{64} In examining the propriety of comments by trial counsel during closing arguments, the New Mexico Supreme Court has held that district courts must strike a balance between the influence that closing arguments can have on a jury and the extemporaneous nature of the closing arguments, especially a rebuttal argument. *State v. Sosa*, 2009-NMSC-056, ¶¶ 24-25, 147 N.M. 351, 223 P.3d 348. For this reason, counsel is afforded reasonable latitude in closing arguments, and jury members are instructed that "they are to base [the] deliberations only on the evidence along with instructions from the court, and not on argument from counsel." *Id*. ¶ 25. Our Supreme Court has instructed that we consider three factors when analyzing whether statements contained in a closing argument require reversal of a jury verdict: "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Id.* ¶ 26. However, in cases that resulted in reversible error,

"the prosecutors' comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial." *Id.* ¶ 34.

{65} At the outset, we note that Defendant's argument regarding whether the State painted Defendant as a "bad person" was allegedly based upon comments about Defendant's current drug use and asking the jury to disregard testimony from "somebody like that." Defendant's argument misstates the record. Our examination of the closing argument transcript reveals that the State was speaking about the credibility of Mother's ex-husband and not referring to Defendant at all. The transcript states in relevant part:

> He's [Mother's] ex-husband. He dislikes her. Of course, he's going to get up on the stand and tell you how she lies. . . . he's also a criminal who's not honest with us or you about his criminal history. . . . He's got a drug problem now. . . . [Defense counsel] wants you to rely on testimony coming from someone like that. I'd ask you to disregard his testimony.

While we do not intimate that Defendant intentionally misstated the record, we do not reach this issue as Defendant did not present an argument regarding the impropriety of these statements about a different witness, not Defendant. *See Garnenez*, 2015-NMCA-022, ¶ 15 ("We will not address arguments on appeal that were not raised in the brief in chief and have not been properly developed for review.").

{66} Next, Defendant argues that the State "personally attacked defense counsel by suggesting he was intimidating . . . Y.J., an impermissible personal attack on opposing

48

counsel." Specifically, Defendant takes issue with the State's comment that, during cross-examination of Y.J., defense counsel asked her if she saw that her father was crying in court. The State then stated that "at some point, the intimidation has got to stop." While Defendant provides a citation stating that the State's "personal belief in . . . the competency and honesty of opposing counsel [is] absolutely irrelevant, and ha[s] no place at any time in a courtroom and cannot be stated or implied[,]" *State v. Breit*, 1996-NMSC-067, ¶ 82, 122 N.M. 655, 930 P.2d 792 (emphasis omitted), Defendant provides no argument or analysis of the actual issue and whether Defendant's crying was considered intimidating to the children. He merely asserts that the State's comments of intimidation were prejudicial and, because they were made in the context of rebuttal during closing arguments, Defendant was deprived of any opportunity to confront or contradict the State's argument. As we have stated several times throughout this Opinion, we will not do Defendant's work for him and either attempt to develop the substance of his argument or guess what his argument may be. *Headley*, 2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). A mere assertion of prejudice is not sufficient to establish prejudice. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

For this reason, we decline to address whether Defendant's crying during trial was appropriately considered to be intimidation toward Y.J.

## VIII. CUMULATIVE ERROR

{67} Lastly, Defendant asserts that the cumulative errors present in this case denied Defendant the right to a fair trial and warrant reversal of Defendant's convictions. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. "The doctrine of cumulative error is to be strictly applied, and cannot be invoked if the record as a whole demonstrates that the defendant received a fair trial." *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 (omission, alterations, internal quotation marks, and citation omitted). Defendant has failed to show this Court that his trial was unfair. While we acknowledge in this Opinion there were errors in Defendant's case, his plain assertion that the "errors in the aggregate were so prejudicial as to deny [Defendant] a fair trial" is not sufficient to establish the truth of this contention on appeal. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10 ("An assertion of prejudice is not a showing of prejudice."). The reversible errors we have addressed in our review do not require retrial and can easily

be resolved on remand to the district court. For these reasons, we conclude that Defendant failed to establish sufficient prejudice to warrant the grant of a new trial under the doctrine of cumulative error.

**CONCLUSION**

{68}    For the foregoing reasons, we affirm Defendant's convictions in part, reverse as to Counts 5, 6, and 7, and remand for further proceedings in order to dismiss one set of the alternative convictions for child abuse by endangerment under Counts 8, 11, 14, 15, and 17.

{69}    **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**JONATHAN B. SUTIN, Judge**